UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND (Greenbelt Division)

| | |
|---|---|
| RICARDO J. ZAYAS, RECEIVER AND AUTHORIZED AGENT FOR: ) | CASE NO. 8-16-cv-03193-GJH |
| ) | |
| SUMMIT TRUST CO., ) | |
| ) | |
| THE RUDASILL FAMILY CHARITABLE ) | |
| REMAINDER) ANNUITY TRUST ) | |
| ) | |
| THE BELLAVIA FAMILY TRUST ) | |
| ) | |
| *190 Bethlehem Pike* ) | |
| *Colman, PA 18915* ) | |
| ) | |
| **Plaintiffs,** ) | JUDGE GEORGE J. HAZEL |
| ) | |
| v. ) | |
| ) | |
| ADCOR INDUSTRIES, INC. ) | |
| *234 S. Haven St.* ) | |
| *Baltimore, MD  21224* ) | |
| ) | |
| ADCOR PACKAGING GROUP, INC. ) | |
| *234 S. Haven St.* ) | |
| *Baltimore, MD  21224* ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT ADCOR INDUSTRIES, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

PRELIMINARY STATEMENT

In this case, it is beyond dispute that the plaintiffs Summit Trust Company, the Rudasill Family Charitable Remainder Annuity Trust, and the Bellavia Family Trust (collectively, the "**Plaintiff Trusts**") loaned defendant Adcor Industries, Inc. ("**Defendant**", or "Adcor") over $ 500,000. Defendant, however, has the temerity to claim that it owes nothing at all to the Plaintiff Trusts despite admittedly receiving and retaining

the loan proceeds. In an effort to thwart the Plaintiff Trusts efforts to be repaid, the Defendant, in its "Motion to Dismiss, or, In the Alternative, Motion for Summary Judgment" (the "Motion") sets forth various technical, non-substantive defenses that are wholly without merit, belied by the facts of this matter and do not rebut Plaintiff Trusts' valid claims, to wit: Defendant failed to repay the loans it contracted for and received from the Plaintiff Trusts. Put simply, they were not gifts and should now be repaid.

To the contrary, the Defendant has repeatedly acknowledged its debts as well as its default in repayment to the Plaintiff Trusts. Under the circumstances, Defendant has not met its burden of proof on any of the defenses raised in the Motion. Therefore, Defendant's Motion should be DENIED in its entirety.

## FACTUAL BACKGROUND

Defendant Adcor, a machine manufacturer, actively solicited the Plaintiff Trusts in late 2011 and early 2012 to make commercial loans to Defendant. Adcor's proposal for the loans included financial information attesting to its ability to repay and collateralize the loans. See Complaint, at Exhibits A and E; see also Declaration of Kevin Brown annexed hereto at Exhibit "J," ¶¶ 6-8; Hilco valuation of patent portfolio, annexed hereto at Exhibit "K." After arms-length negotiations yielded an agreement between the parties, Summit Trust Company prepared and presented Defendant with loan documentation, including a promissory note and guarantees to be signed. See Exhibit J, ¶ 9; Loan documents annexed hereto at Exhibit "L."

A series of three loans were thereafter issued, one from each of the Plaintiff Trusts, all administered by Summit Trust Company ("**Summit**"). Although loan documents were not yet signed, Defendant agreed to the loans and received the loan proceeds from the

Plaintiffs by wire transfer to Defendant's accounts as follows: (1) $145,292.40 from the Rudasill Family Charitable Remainder Annuity Trust ("**Rudasill**") on February 29, 2012; (2) $200,000.00 from Summit on March 7, 2012; and (3) $172,800.00 from the Bellavia Family Trust ("**Bellavia**") on March 9, 2012. See Complaint at Exhibits B, C, and D; see also wire transfer instructions from Adcor CEO, Alex Levin annexed hereto at Exhibit "M."

Despite receiving and retaining the loan proceeds, Defendant Adcor refused to execute any documents memorializing the agreed-upon terms. See Complaint, Exhibit G; Exhibit J, ¶ 14. In January, 2014, Defendant Adcor, through its authorized agent and officer, Jimmy Stravakis ("**Stravakis**"), acknowledged the debts Defendant Adcor owed to the Plaintiff Trusts and stated his intention to sign loan documents memorializing the loans. See Exhibit J, ¶¶ 14-16. Most recently, in a face-to-face meeting with Kevin Brown in February of 2015, Stravakis again acknowledged Defendant Adcor's debt. See Exhibit J, ¶ 17. Despite these representations, no portion of the loans has been repaid. Id., ¶ 18.

## ARGUMENT

### I.
### DEFENDANT HAS FAILED TO MEET ITS BURDEN FOR DISMISSAL OR SUMMARY JUDGMENT

Defendant has filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Where, as here, the court may consider matters outside of the pleadings, a motion to dismiss is treated as one for summary judgment. Fed. R. Civ. P. 12(d).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be denied unless the complaint fails to "contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). A Fed. R. Civ. P. 12(b)(6) motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Factual allegations in the complaint are accepted by the Court as true and should be construed in a light most favorable to the plaintiff. See *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint should not be dismissed even if "actual proof of those facts is improbable and recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). All that is required to satisfy the pleading requirements is a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Likewise, summary judgment should not be granted unless the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . . admissions, interrogatory answers, or other materials " show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is inappropriate where the non-movant has not been able to engage in discovery essential to opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1987). The movant in a motion for summary judgment bears the burden in demonstrating an absence of dispute as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). A material fact is a fact that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson*, 477 U.S. 242 at 248). When the

Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

As set forth below, the Plaintiff Trusts' complaint states facts, which if as taken as true, state a plausible claim for relief that is not subject to dismissal under Rule 12(b)(6). Additionally, the allegations in Plaintiff Trusts' Complaint raise genuine issues of material fact that preclude summary judgment in favor of the Defendant as well.

### A. The Parties Contracted to Make Loans

Contracts may be established by either words or conduct indicating intent to contract. Where words create a contract, such contracts may be either written or oral. See *Dolan v. McQuaid*, 215 Md. App. 24, 35 (2013) (citing *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs*, 155 Md. App. 415, 470-71 (2004)). Oral and written contracts are equally valid and enforceable. See *Lopez v. XTEL Const. Grp., LLC*, 796 F. Supp. 2d 693, 699 (D. Md. 2011) ("[T]he agreement exists once offer, acceptance, and consideration are exchanged between the parties, regardless of whether the agreement is oral or written." (internal quotation marks and citation omitted)). In the absence of words affirming an agreement, conduct evidencing an intent to contract will establish a contract implied-in-fact. See *Dolan* at 36 (citing *Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987) ("A contract implied in fact is a 'contract' established by conduct.")). A claim for breach of contract will succeed where the plaintiff can prove "that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (Md. 2001).

5

As set forth in the Plaintiff Trusts' complaint and the exhibits attached thereto, the parties in this case agreed both expressly and by their conduct to enter into a series of loans from the Plaintiff Trusts to Adcor. See Complaint, ¶¶ 8-15 and corresponding Exhibits. Plaintiffs have therefore sufficiently satisfied all notice pleading requirements of making a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Defendant's contention to the contrary is completely without merit. Moreover, to the extent Defendant disputes these allegations, genuine issues of material fact exist that preclude the entry of summary judgment in favor of the Defendant.

Adcor cannot dispute that it induced the Plaintiff Trusts into making the loans based on its provision to Plaintiff Trusts of extensive financial documentation, including fair market valuations, balance sheets, and a valuation of its intellectual property intended as collateral for the loans. See Complaint, Exhibits A, E; Exhibit J, ¶¶ 7,8; Exhibit K. Negotiations and the loan agreement reached between the parties are attested to by Summit's former president, Kevin Brown. See Exhibit J, generally. The essential terms of the parties' loan agreements were then reduced to writing in loan documents presented to Defendant Adcor prior to the issuance of the loans. See Exhibit J, ¶ 9; Exhibit L. Defendant Adcor orally agreed to the essential terms of the loans. See Exhibit J, ¶¶ 7-13.

Although Adcor had not signed the documents, its authorized agent and officer, Alex Levin, provided Summit wire instructions and directed the Plaintiff Trusts to wire the loan proceeds to Defendant Adcor's account. See Exhibit J, ¶¶ 10-13; Exhibit M. Pursuant to Defendants' instructions, loans were made in the amounts set forth above by each of the Plaintiff Trusts. Id.; see also Complaint at Exhibits B, C, and D. Thus, all of Defendant's

communications and actions resulted in the Plaintiff Trusts entering into loan agreements with Adcor, the funding of the Loans and the retention of the loan proceeds by Defendant.

Furthermore, to secure the Loans in accordance with the agreements between the Parties, Summit, on behalf of itself and the Plaintiff Trusts, recorded and perfected first priority security interests in the intellectual property collateral of Adcor. See Complaint, Exhibit F.

Thus, the parties' communications and conduct at all times clearly establish a debtor-creditor relationship.

### B.   Defendant Adcor Breached the Loan Contracts

Despite multiple demands made by the Plaintiff Trusts, Defendant failed to repay any portion of the loans or any interest thereon as was required under the parties' loan agreements. See Complaint, Exhibit G; Exhibit J, ¶ 18. Defendant Adcor simply retained the funds.

Moreover, on several occasions after the loans were made, Defendant Adcor promised to sign restated loan documents and repay the loans in exchange for the Plaintiff Trusts' forbearance in filing an action for repayment of the loans. See Complaint, Exhibit F; Exhibit J, ¶¶ 14-15. Despite these representations, Defendant continued to breach its agreements with the Plaintiff Trusts by not signing the loan documents which were again given to Adcor on multiple occasions, as well as failing to repay or otherwise make any payments on the loans. See Complaint, Exhibit G; Exhibit J, ¶¶ 14-17.

In an effort to further attempt to thwart the Plaintiff Trusts' ability to protect its interests with respect to the loans and the security pledged by the Defendant, Adcor unilaterally and surreptitiously filed a UCC-3 termination statements with Maryland's

State Department of Assessments and Taxation ("SDAT") in June of 2013. See Complaint, Exhibit I. This attempt to extinguish the Plaintiff Trusts' security interest constitutes a breach of the parties' agreement to collateralize the loan. Moreover, it is further proof that Defendant knew that collateralized loans existed because if such loans did not exist, there would be no need to terminate the Plaintiff Trusts' security interests with respect to the loans.

The Plaintiff Trusts have made due demand for repayment of the loans and for payment of interest on multiple occasions. See Complaint, Exhibit G. Thus, at all times the parties operated with the understanding that loans were made and that the loans remain in default. Defendant has not and cannot point to anything to repudiate the loans or its breach of the loan agreements due to its failure to repay the loans and its attempt to deprive the Plaintiff Trusts of the security interests collateralizing the loans. Adcor stands in breach of the parties' respective contracts due to its non-performance under the agreements. On this basis alone, Defendant Adcor's motion should be denied.

## II.
## GENUINE ISSUES OF MATERIAL FACT EXIST AS TO PLAINTIFF TRUSTS' WELL-PLED CLAIMS FOR UNJUST ENRICHMENT

The parties in this case agreed by their words and conduct to each of the loans. However, even if the parties had not so contracted (which by no means is conceded) the Plaintiff Trusts would still be entitled to recovery under their claims of unjust enrichment. A claim for unjust enrichment in Maryland has three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such

circumstances as to make it inequitable for the defendant to retain the benefit without the payment." *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000).

Here, there can be no dispute that the Plaintiff Trusts conferred monetary benefits to Defendant Adcor in excess of $500,000 in loans, which Defendant Adcor is well aware of and has retained. The inequities of Adcor retaining this benefit are manifest. Beyond an unearned windfall of the funds, it is also inequitable for Adcor to escape repayment where it has repeatedly acknowledged its debt to Plaintiff Trusts, indicated its intent to sign restated loan documents, surreptitiously sought to deprive Plaintiff Trusts of their security interests and sought the Plaintiff Trusts forbearance in filing suit to recover the funds. See Exhibit J, ¶¶ 15-18; Complaint, Exhibits H, I.

Defendant's contention that the provision of these funds was "a hope or a gamble" (Defendant's Brief, p. 9) is therefore without any merit and is unsupported by the parties' communications and the entire documentary record that exists. Likewise, the complaint and its attached exhibits wholly rebut Defendant's contention that the claims for unjust enrichment are insufficiently pled. See Fed. R. Civ. P. 8(a)(2) (requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief").

Defendant has failed to demonstrate the absence of genuine issues of material fact as to the transfer of the loan proceeds, its knowledge and retention thereof, and the inequity of its failure to repay the funds with interest. Accordingly, its motion to dismiss Plaintiff Trusts' unjust enrichment claims should be denied.

## III.

## PLAINTIFFS' CLAIMS WERE FILED BEFORE THE RUNNING OF ANY APPLICABLE STATUTE OF LIMITATIONS

Defendant Adcor asserts that the Plaintiff Trusts' instant claims are barred by the three-year statute of limitations set by § 5-101 of the Maryland Code, Courts & Judicial Proceedings. On the contrary, the statute of limitations has not run on Plaintiff Trusts' claims because Defendant has acknowledged its debts to the Plaintiff Trusts several times within the three years prior to the filing of the instant claims, thus restarting the limitations period under Maryland law.

In Maryland a party's acknowledgement of a debt serves to restart the running of the statute of limitations with regard to the lender's claims to collect the acknowledged debt. As stated by the Court of Appeals of Maryland:

> The statute of limitations does not extinguish the debt; it bars the remedy only. Thus, Maryland law has long recognized that acknowledgement of a debt barred by limitations removes the bar to pursuing the remedy. An acknowledgement, sufficient to remove the bar of limitations, need not expressly admit the debt, it need only be consistent with the existence of the debt. Nor must it be an express promise to pay a debt; just as an express promise to pay a debt barred by limitations revives the remedy, "a mere acknowledgement of such a debt will remove the bar of the statute, because if the debtor acknowledges the debt it is implied that he promises to pay." An acknowledgement of a debt can occur prior to the running of limitations...in which event, rather than removing the bar of limitations, it both tolls the running of limitations and establishes the date of the acknowledgment as the date from which the statute will now run.

*Jenkins v. Karlton*, 329 Md. 510 at 531 (1993) (citations omitted). In *Columbia Association, Inc. v. Poteet*, 199 Md. App. 537 (2011), the Maryland Court of Special Appeals noted that the rationale for a limitations period as to claims for debts owed is based

10

on a presumption of debt repayment. Thus the debtor's acknowledgment of the debt restarts the running of the limitations period.

> The Act of Limitations is predicated on the principle, that from length of time a presumption is created that the debt has been paid, and that the debtor is deprived of his proof by the death of his witnesses or the loss of receipts. It is the design of the Act of Limitations to protect and shield debtors in such a situation; and consistent with this principle and this view, the decisions have been made, that the acknowledgment or admission of the debtor will take the case out of the Act of Limitations, because if the money is still due and owing, the defendant has not suffered from lapse of time, nor has any inconvenience resulted to him therefrom.
>
> * * *
>
> The Act of Limitations was never intended to prevent the recovery of debts really due, but to protect persons from old claims when the evidence of their discharge, from length of time was supposed to have been lost.

*Columbia Association Inc.*, 199 Md. App at 557-58 (quoting *Barney v. Smith*, 4 H. & J. 485, 495-96 (1819)). As to the form of a debtor's acknowledgment, either words or conduct is sufficient. See *id.* at 560 (citing *Barney*, 4 H. & J. at 495).

In the case at bar, Defendant acknowledged its debts to Plaintiff Trusts within the three-year limitations period preceding the filing of Plaintiff Trusts' claims with this Court. In January, 2014, Stravakis acknowledged in a telephone conversation with Kevin Brown the existence of Adcor's outstanding debts to the Plaintiff Trusts. See Exhibit J, ¶ 16. During this conversation, Stravakis stated that he was aware of Defendant Adcor's debts and that Plaintiff Trusts should prepare loan documents for him to sign. Id., ¶¶ 15-16. In accord with Stravakis' acknowledgment and request, Plaintiff Trusts prepared and

presented restated loan documents for his signature. Id.,¶ 15; see also Exhibit N. These documents were not signed. See Complaint, ¶ 18; Exhibit J, ¶ 14.

Stravakis again acknowledged Defendant's debts to the Plaintiff Trusts in a face-to-face meeting with Brown in February of 2015. See Exhibit J ¶ 17. During this conversation, Stravakis stated that he was aware of Defendant Adcor's debts to Plaintiff Trusts. Id.

Thus, Defendant Adcor acknowledged the loans by both express statements and conduct. In accord with *Jenkins v. Karlton, supra*, each of these acknowledgments of Defendant Adcor's debts to Plaintiff Trusts are sufficient "to remove the bar of the statute, because if the debtor acknowledges the debt, it is implied that he promises to pay." *Jenkins* at 531. Moreover, because the date of acknowledgment serves at the "date from which the statute will now run," the statute of limitations will not run on Plaintiff Trusts claims until February, 2018 at the earliest, three years after Defendant Adcor's last acknowledgment of its debts to Plaintiff Trusts. Plaintiff Trusts have thus filed their claims well within the limitations period.

Since a defendant asserting an affirmative defense based on the statute of limitations bears the burden of proof on the defense, the fact that Defendant acknowledged the loans as late as 2015 makes it impossible for Adcor to satisfy this burden. See *Newell v. Richards,* 323 Md. 717, 726 (1991). Plaintiff Trusts' claims are not time-barred and Defendant's motion on this basis should be denied.

## IV.

## THE RECEIVER PROPERLY ACTS AS AGENT FOR ITS RECEIVERSHIP PARTY SUMMIT AND, IN THE INSTANT ACTION, AS AUTHORIZED AGENT FOR RUDASILL AND BELLAVIA

By order of the United States District Court for the Eastern District of Pennsylvania, Ricardo J. Zayas ("Receiver") is the appointed receiver and authorized agent for Summit. See Exhibit J, ¶ 3; see also Order ("**Order**") entered on November 25, 2015 appointing Ricardo J. Zayas as Receiver annexed hereto at Exhibit "O." The Receiver is plainly identified as such in the complaint. See Complaint, Caption and ¶ 1. The Receiver is authorized and ordered to act on Summit's behalf. See Exhibit O, ¶ 3, *et seq.* Contrary to Defendant's apparent misapprehension (see Defendant's Brief, p. 13), there is nothing in the pleadings suggesting that Summit and Summit's Receiver are legally separate entities for the purposes of this civil action. Therefore, to the extent Defendant seeks the dismissal of Summit as a separate plaintiff under Fed. R. Civ. 17(a), its motion is must be denied.

Defendant Adcor also contends that the Receiver should be dismissed as the agent for Rudasill and Bellavia because the Complaint is insufficient to show an agency relationship. However, the Plaintiff Trusts' complaint clearly states: "The Receiver has been authorized to commence and maintain this action on behalf of all Plaintiffs." See Complaint, ¶ 2. Summit is the trustee and fiduciary for both the Rudasill and Bellavia Trusts. In this capacity, Summit has the authority under Nevada law as well as the trust agreements to act on the Trusts' behalf, including prosecuting an action to recover trust assets.[1] As court appointed Receiver for Summit, Ricardo Zayas also has full and

---

[1] See Nevada Revised Statute 163.375. Litigation, compromise or abandonment of claim. A fiduciary may compromise, adjust, arbitrate, sue on or defend, abandon or otherwise deal with and settle claims in favor of or against the estate or trust as the fiduciary deems advisable, and the fiduciary's decision shall be conclusive between the fiduciary and the beneficiaries of the estate or trust and the person against or for whom the claim

complete authority to act on its behalf to prosecute this action under the Order. See Exhibit O, ¶¶ 3, 6.

Although not required, in an abundance of caution the Receiver has obtained a declaration establishing the agency relationship between the Bellavia Trust and the Receiver, a copy which is annexed hereto at Exhibit "**P**." With respect to the Rudasill Trust, it is an irrevocable charitable annuity trust. As such, Summit acts the sole trustee and is obligated under the Nevada trust laws to act as a fiduciary for the trusts, which requires Summit (and now the Receiver) to take all actions necessary to carry out these fiduciary duties. See footnote 1, supra.

Further, the factual basis supporting continuing agency relationships for the purposes of this action is more than obvious from the pleadings, where it is made clear that Summit negotiated and administrated the loan agreements and the transfer of funds on behalf of Rudasill and Bellavia. See Complaint, ¶¶ 10-11 and corresponding Exhibits.

Plaintiff Trusts have therefore offered ample factual support and averment as to the authorizations for the agency relationships between Summit, by way of its agent Receiver, and the Rudasill and Bellavia Trusts. To the extent that Defendant has moved to dismiss the Receiver as Rudasill's and Bellavia's authorized agent for the purposes of this action, such motion should be denied.

### V.

### PLAINTIFF TRUSTS ARE NOT REQUIRED TO REGISTER WITH THE MARYLAND SDAT IN ORDER TO MAINTAIN THE INSTANT SUIT

Defendant Adcor further contends that, per Md. Code, Corps. & Assocs. § 7-202 and § 7-301, Plaintiff Trusts' cannot maintain the instant suit without first registering with

---

is asserted, in the absence of fraud by such person, and, in the absence of fraud, bad faith or gross negligence of the fiduciary, shall be conclusive between the fiduciary and the beneficiaries of the estate or trust.

the Maryland SDAT. Such contention fails because Maryland courts have clearly circumscribed the applicability of Md. Corps. & Assocs. § 7-301 to businesses with far more extensive and significant Maryland business contacts than Plaintiff Trusts have ever had.

In order for Maryland's "door-closing" statute, Md. Corps. & Assocs. § 7- 301 to apply, a foreign corporation must have an extensive business presence in Maryland. See *Turner v. Smalis*, 622 F. Supp. 248, 252-53 (Dist. Md. 1985). Where a corporation's business presence is sufficiently extensive for the "door-closing" statute to apply, the corporation is said to be "doing business" in Maryland.

> The "doing business" test requires far more than occasional interstate sales activity conducted in Maryland. There is no fixed formula for determining whether a corporation is doing business in Maryland. Rather, doing business requires a permanent corporate presence in Maryland, traditionally manifested by such in-state activities as: maintaining a Maryland sales force, having Maryland personnel, having a Maryland distribution network, payment of Maryland taxes, ownership of Maryland real estate, and/or other typical indicia of doing intrastate business in Maryland.

*Id.* at 253 (citing *S.A.S Personnel Consultants, Inc. v. Pat-Pan, Inc.*, 286 Md. 335, 339 (1979)).[2]

Here, the Trusts are not corporations and are therefore not subject to Maryland's corporate laws. Rather, they are privately held trusts. Defendant's reliance on the corporate "door closing" statute is therefore misplaced. Moreover, even if it were to apply, none of the Plaintiff Trusts has ever maintained a business presence in Maryland that meets even one of these several indices of "doing business" in Maryland. Therefore, because the

---

[2] Such interpretation is intended to avoid conflict with the U.S. Constitution's Commerce Clause. See *G.E.M., Inc. v. Plough, Inc.*, 228 Md. 484, 486-89 (1962).

Plaintiff Trusts do not meet the "doing business" criteria necessary for Maryland's door-closing statute to apply, Defendant's motion on this basis should also be denied.

## CONCLUSION

After an arms-length negotiation, Defendant Adcor bargained for, received and retained over $500,000 in loans from the Plaintiff Trusts. These funds were not gifts. Plaintiff Trusts received nothing in return for the funds except Defendant's promise of repayment and adherence to the terms of the loans as established by the parties' express agreement and by their conduct. Defendant's contention that the statute of limitations bars recovery is wholly inapposite because of its recent acknowledgment of its debts, all well within the limitations period. For these reasons, as well as others stated herein, Defendant's "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" should be DENIED.

Respectfully Submitted,
Askinazi Law & Business, LLC

By: s/ *William F. Askinazi*
William F. Askinazi
12054 Palatine Ct.
Potomac, MD 20854
301-540-5380
Bar #: 12522

and

Montgomery McCracken Walker & Rhoads LLP
Joseph O'Neil, Jr. (*pro hac vice* admission to be requested)
1235 Westlakes Drive, Suite 200
Berwyn, PA 19312
610-889-2232
Bar #: 207872

*Attorneys for the Plaintiffs*