IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

2017 SEP 26 A 10: 25

| | | |
|---|---|---|
| RICARDO J. ZAYAS, RECEIVER AND AUTHORIZED AGENT FOR: | * | |
| SUMMIT TRUST CO. | * | |
| THE RUDASILL FAMILY CHARITABLE REMAINDER ANNUITY TRUST | * | |
| THE BELLAVIA FAMILY TRUST | * | |
| Plaintiffs, | * | Case No.: GJH-16-03193 |
| v. | * | |
| ADCOR INDUSTRIES, INC. | * | |
| ADCOR PACKAGING GROUP, LLC.[1] | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Ricardo J. Zayas, receiver and authorized agent for Summit Trust Company, the Rudasill Family Charitable Remainder Annuity Trust, and the Bellavia Family Trust (collectively, the "Trusts" or "Plaintiffs") brought a Complaint on behalf of the Trusts against Defendants Adcor Industries, Inc. and Adcor Packaging Group, LLC (collectively, "Defendants"), alleging that Defendants defaulted on a loan made by Plaintiffs in the amount of approximately $518,000 in February and March 2012. ECF No. 4. Defendants move to dismiss the Complaint or, in the

---

[1] Defendants note that Plaintiffs incorrectly name one Defendant as Adcor Packaging Group, Inc., which is not a legal entity in Maryland. ECF No. 9-2 at 12 n.4. The case caption will be corrected to reflect the Defendant's name as Adcor Packaging Group, LLC.

alternative, for summary judgment. ECF No. 9-2. No hearing is necessary to resolve the motion. Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Defendants' motion is granted, in part, and denied, in part.

I. **BACKGROUND**[2]

Zayas is the court appointed receiver for Summit Trust Company ("STC") pursuant to an order of the United States District Court for the Eastern District of Pennsylvania entered on November 25, 2015. ECF No. 4 ¶ 1; ECF No. 12-7. As receiver for STC, Zayas is also an authorized agent for the Rudasill Family Charitable Remainder Annuity Trust ("Rudasill") and the Bellavia Family Trust ("Bellavia"). *Id.* ¶ 2. STC is a resident of Pennsylvania, and Rudasill and Bellavia are both non-Maryland entities. *Id.* ¶¶ 1, 2. Defendant Adcor Industries, Inc. ("Adcor") is a Maryland corporation that manufactures, assembles, and supplies precision machine components, aerospace, telecommunications and weapons systems applications. *Id.* ¶ 3. Defendant Adcor Packaging Group, LLC ("Adcor Packaging") is a Maryland corporation and maintains the same principal place of business as Adcor. *Id.* ¶ 4. Jimmy Stavrakis is principal and owner of both Adcor and Adcor Packaging. *Id.* ¶ 22.

In February and March 2012, the Trusts provided a series of loans to Defendants by three separate wire transfers in the total amount of $518,092.40.[3] *Id.* ¶ 13; ECF No. 4-3; ECF No. 4-4; ECF No. 4-5. Plaintiffs allege that Defendants induced STC into making the loans on behalf of the Trusts and provided Plaintiffs with funding requests along with Adcor's financial information, balance sheets, and financial statements. ECF No. 4 ¶ 14; ECF No. 4-6. While

---

[2] Unless stated otherwise, the facts are taken from the Complaint and assumed to be true.

[3] Specifically, Plaintiffs allege STC, as agent for Rudasill, funded a loan to Defendants in the amount of $145,292.40 on or about February 29, 2012, STC, as agent for Bellavia, funded a loan to Defendants in the amount of $172,800 on or about March 9, 2012, and STC, on its own behalf, funded a loan to Defendants in the amount of $200,000 on or about March 7, 2012. ECF No. 4 ¶¶ 10–12.

2

Defendants had not ratified a loan agreement or letter of intent related to the loans, Plaintiffs allege that the parties came to a mutual agreement on the terms of the loans in December 2011. ECF No. 4 ¶¶ 9, 14; ECF No. 4-2.

On May 10, 2012, STC unilaterally filed three individual UCC-1 Financing Statements with the Maryland State Department of Assessments and Taxation ("SDAT") for a security interest in Adcor's patent portfolio, ECF No. 4-7, allegedly perfecting Plaintiffs' security interests in the patent portfolio as collateral for the loans. ECF No. 4 ¶¶ 15, 16. On June 18, 2013, Defendants, or their representatives, unilaterally filed UCC-3 Financing Statement Amendments with SDAT terminating the security interests filed by Plaintiffs. ECF No. 4-10.

Following the wire transfers in February and March 2012, Defendants allegedly failed to execute the loan documents and refused to repay the loans. ECF No. 4 ¶ 18. STC sent demand letters on May 31, 2012, May 31, 2013, January 31, 2014, October 22, 2014, and February 24, 2015. ECF No. 4-8. Plaintiffs allege that the current balance of the loans, including interest, is no less than $859,783.71. ECF No. 4 ¶ 25. Plaintiffs assert the following claims: Money Judgment, Declaratory Relief (Count I); Unjust Enrichment (Count II); Civil Conspiracy (Count III); Breach of Duties: Care, Good Faith and Fair Dealing, Declaratory Relief (Count IV); Breach of Contract (Count V); and Theft and/or Conversion (Count VI).

## II. STANDARD OF REVIEW

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alterative, for summary judgment pursuant to Rule 56. ECF No. 9.

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss, a court "must accept as

true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss invoking Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544. 570 (2007)).

### B. Motion for Summary Judgment Pursuant to Rule 56

Defendant's motion is styled as a motion to dismiss, or in the alternative, for summary judgment. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings, and the court considers those matters, the court will treat the motion as one for summary judgment. See *Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Mansfield v. Kerry*, No. DKC-15-3693, 2016 WL 7383873, at *2 (D. Md. Dec. 21, 2016). All parties must be given some indication by the Court that it is treating a motion to dismiss as one for summary judgment, "with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." *Gay v. Wall*, 761 F.2d 175. 177 (4th Cir. 1985).

When the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment," as in the case here, and attaches additional materials to its motion, the non-moving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan*

4

*Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre- or post-discovery).

However, summary judgment should not be granted if the non-moving party has not had the opportunity to discover information that is essential to his opposition to the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1987). If the non-moving party feels that the motion is premature, that party can invoke Fed. R. Civ. P. 56(d). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Under Rule 56(d), the Court may deny a motion for summary judgment if the non-movant shows through an affidavit that, for specified reasons, he or she cannot properly present facts, currently unavailable to him or her, that are essential to justify an opposition. Fed. R. Civ. P. 56(d). Plaintiffs have not invoked Rule 56(d) in this case by filing an appropriate motion with an attached affidavit.

A court may grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A material fact is one that constitutes an element that is essential to a party's case. *Celotex*, 477 U.S. at 322–23; *see also Anderson*, 477 U.S. at 248 ("the substantive law will identify which facts are material").

A genuine issue as to a material fact exists if the evidence that the parties present to the court is sufficient to indicate the existence of a factual dispute that could be resolved in the non-moving party's favor through trial. *See Anderson*, 477 U.S. at 248–49. While it is the movant's burden to show the absence of a genuine issue of material fact, *Pulliam Inv. Co., Inc. v. Cameo*

*Properties*, 810 F.2d 1282, 1286 (4th Cir.1987), it is the non-moving party's burden to establish its existence, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986), and "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

Defendants allege that Plaintiffs' Complaint should be dismissed because (1) Plaintiffs' claims are barred by the statute of limitations, (2) the Complaint does not include sufficient facts or grounds for relief, and (3) Plaintiffs have failed to allege recognized causes of action. ECF No. 9-2 at 2.[4] Defendants also object to the named parties; alleging that Zayas is not a real party in interest and does not have standing to bring this action on behalf of Rudasill and Bellavia, STC is barred by Maryland law from bringing this action, and that defendant Adcor Packaging should be dismissed. *Id.* Each of these points are addressed below.[5]

#### A. Statute of Limitations (All Counts)

Defendants argue that Plaintiffs' claims are barred by the applicable statute of limitations. Plaintiffs respond by submitting evidence intended to demonstrate that their claims remain viable. ECF No. 12-1. The statute of limitations for civil actions in Maryland is three years unless otherwise provided by the Maryland Code. *See* Md. Code, Cts. & Jud. Proc., § 5-101. The statute of limitations is an affirmative defense to which a plaintiff can respond. *See* Fed. R. Civ. P. 8(c)(1); *see also Guy v. E.I. DuPont de Nemours & Co.* 792 F.2d 457, 460–61 (4th Cir. 1986) (finding that the district court erred in denying plaintiff leave to amend the complaint in an

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[5] Defendants have not presented any materials outside of the pleadings to support their Motion to Dismiss, or in the alternative, Motion for Summary Judgment, ECF No. 9-2. However, Plaintiffs have attached seven additional exhibits to its response, ECF No. 12. As such, the Court will construe Defendants' motion to be one for summary judgment where the Court relies on Plaintiffs' additional exhibits for individual counts. *See Gadsby*, 109 F.3d at 949.

6

attempt to respond to a limitations defense, which is an affirmative defense that a plaintiff is not required to anticipate); *Reynolds v. Needle*, 132 F.2d 161, 162 (D.C. Cir. 1942) (noting that a plaintiff could have "amended his complaint, served affidavits, or asked permission to reply" to allege material facts which would toll the statute of limitations).[6]

"Under § 5–101, the statute of limitations begins to run from the time the action 'accrues.' Because the term 'accrue' is undefined by the legislature, the question of accrual is left to judicial determination." *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 333 (1994). In determining the time the action accrues, Maryland courts have moved from the general rule that the action accrues on the date the wrong was committed and instead applies the discovery rule whereby the action accrues when "a plaintiff in fact knows or reasonably should know of the wrong." *Id.* at 334 (citing *Poffenberger v. Risser* 290 Md. 631, 636 (1981)).

At the very earliest, Plaintiffs' action accrued in February or March 2012, when the Trusts made the wire transfers to Defendants and Defendants allegedly kept the money for purposes other than the alleged loans. As a result, Plaintiffs' statutory bar for bringing this action would be in February or March 2015.[7] However, "Maryland law has long recognized that acknowledgment of a debt barred by limitations removes the bar to pursuing the remedy." *Jenkins v. Karlton*, 329 Md. 510, 531 (1993). "An acknowledgement of a debt can occur prior to the running of limitations, in which event, rather than removing the bar of limitations, it both tolls the running of limitations and establishes the date of the acknowledgment as the date from

---

[6] Although not formally requested, the Court will grant leave to Plaintiffs to file an amended complaint to allege facts consistent with those asserted in their opposition in response to Defendants' statute of limitations defense.

[7] Adcor filed the UCC-3 forms terminating Plaintiffs' security interests in Adcor's patent portfolio on June 18, 2013, so Plaintiffs' claims, as they relate to their rights in the security interest, could be barred as early as June 18, 2016. Defendants suggest that UCC-3 filings with SDAT were public information and would therefore put "a person of ordinary prudence" on notice and, as a result, the discovery rule should not apply to allow for an accrual date later than June 18, 2013. ECF No. 9-2 at 6–7 (citing *Poffenberger*, 290 Md. at 637). Because the Court determines below that the doctrine of acknowledgment applies, this argument is without merit.

which the statute will now run." *Id.* (internal citations omitted). "The acknowledgment must be a clear, distinct, and unqualified admission. The evidence of the acknowledgment must also be considered in its entirety, and the creditor cannot accept the admission and reject any qualification that might make the acknowledgment ineffective." *Mayor and Council of Federalsburg v. Allied Contracts, Inc.*, 275 Md. 151, 160–61 (1975) (citing *Doughty v. Bayne*, 222 Md. 361, 365 (1960)).

Plaintiffs, relying on the declaration of Kevin Brown, then-President of STC, alleges that Stavrakis acknowledged Adcor's outstanding debts to the Trusts twice on or before February 2015. ECF No. 12 at 7. In a telephone conversation in January of 2014, Stavrakis allegedly stated that he was aware of the debts and requested STC to prepare loan documents for him to sign. ECF No. 12-1 ¶¶ 15–16. As a result, STC allegedly prepared amended loan documents dated February 14, 2014 to reflect the initial loan and accrued interest. ECF No. 12-5. In a face-to-face meeting in Baltimore, Maryland in February of 2015, Stavrakis allegedly again acknowledged the Defendants' debts. *Id.* ¶ 17.

In response, Defendants do not refute that the conversations between Brown and Stavrakis took place. Rather, Defendants state that Plaintiffs' claims are simply "bald legal conclusions" that contradict other information put forth in their Complaint. ECF No. 13 at 3–4. Defendants suggest that the January 31, 2014 letter sent to Stavrakis from Paul Tyndall, on behalf of Plaintiffs, which states "[m]ost recently, you have refused to respond to telephone calls regarding these loans," ECF No. 4-8 at 4, directly contradicts Brown's declaration stating that he had a telephone conversation with Stavrakis in January of 2014, ECF No. 12-1 ¶¶ 15–16.

Plaintiffs' reliance on Brown's declaration amounts to more than "bald legal conclusions." *See* Fed. R. Civ. P. 56(c)(1) (a party asserting that a fact is genuinely disputed

8

must support the assertion by, among others, affidavits or declarations). While the January 31, 2014 letter may suggest that the January 2014 telephone conversation between Brown and Stavrakis never took place, the Court must construe this conflicting evidence in favor of Plaintiffs when ruling on a motion for summary judgment by Defendants, and there remains a dispute of material fact as to whether Stavrakis ever acknowledged Defendants' debts. *See Archdiocese of Washington*, 114 Md. App. at 178 ("When the viability of a statute of limitations defense hinges on a question of fact, however, the factual question is ordinarily resolved by the jury, rather than by the court.").

Defendants also suggest that Plaintiffs cannot rely on the doctrine of acknowledgment for an oral or implied in fact contract because the doctrine only applies to contracts established through a written agreement. ECF No. 13 at 3 n.3 (noting that Plaintiffs are unable to point to a case in Maryland where acknowledgment of a debt tolled the statute of limitations when there was no underlying written agreement). But Defendants, likewise, are unable to point to any Maryland court refusing to impose the doctrine of acknowledgment to oral or implied in fact contracts, and such a rule would be inconsistent with the underlying purpose of the doctrine.

In this context, the statute of limitations is predicated on the principal that after a certain amount of time, a presumption is created that the debt has been paid because after such time, the debtor is potentially deprived of showing proof that he has paid the debt "by the death of his witness or the loss of receipts." *Columbia Association, Inc. v. Poteet*, 199 Md. App. 537, 557–58 (2011) (quoting *Barney v. Smith*, 4 H. & J. 485, 495–96 (1819)). But if the debtor acknowledges the debt, he no longer needs the protections of the statute of limitations and "has not suffered from any lapse of time" because the statute of limitations was "never intended to prevent the recovery of debts really due, but to protect persons from old claims when the evidence of their

9

discharge, from length of time was supposed to have been lost." *Id.* Accordingly, the doctrine of acknowledgment applies when a debtor acknowledges "debts really due," regardless of those debts being due through a written, oral, or implied in fact contract.

Finally, Defendants claim that Brown's declaration itself is inadmissible because, contrary to this Court's Electronic Filing Requirements & Procedures for Civil Cases Manual, Electronic Filing Requirements & Procedures for Civil Cases, § III.C.8 at 41 (Dec. 2016), the declaration was signed with an electronic "/s/" signature without "a statement by counsel that he or she has a signed copy." ECF No. 13 at 4–5 (citing *Etienne v. Ameri Benz Auto Service LLC*, No. PWG-14-2800, 2016 WL 1222569, at *3–4 (D. Md. Mar. 9, 2016)). However, in *Etienne*, Judge Grimm provided:

> Notably, "[a] party may object that the material cited to support or dispute a fact *cannot* be presented in a form that would be admissible into evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). Provided that Alemu has personal knowledge of the facts stated in his affidavit, he can resubmit his affidavit on "personal knowledge" and counsel can file a copy with Alemu's handwritten signature or an electronically signed copy that indicates the counsel has the original signed copy on file, such that it is in admissible form. *See* 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4); Loc. R. 601.3; Electronic Filing Requirements & Procedures for Civil Cases, § III.F.4, at 66. Therefore, I will consider Alemu's affidavit for purposes of deciding Plaintiff's motion [for summary judgment], but any decision in Defendants' favor will be contingent on Alemu refiling an admissible affidavit within two weeks of the date of this Memorandum Opinion. See Fed. R. Civ. P. 56(c)(2). Should he fail to do so, I will reconsider this Memorandum Opinion and Order, and determine whether it requires revision.

*Etienne* at *4.

Judge Grimm's approach is persuasive and will be applied here. Accordingly, the Court will consider Brown's declaration for the purposes of Defendants' Motion for Summary Judgment, and Brown may file an admissible affidavit within two weeks of the date of this Order in addition to an Amended Complaint containing the substance of their response to Defendants'

10

statute of limitations defense. Assuming those filings are made, the Court will not dismiss Plaintiffs' claims based on the statute of limitations.

### B. Named Parties

Defendants additionally raise issues regarding the entities named as both plaintiffs and defendants. First, Defendants allege that STC is not a real party in interest because only Zayas, as STC's court-appointed receiver, may bring a claim against them. *See* ECF No. 9-2 at 13 (citing Fed. R. Civ. P. 17(a)). While Zayas is the court appointed receiver for STC, *see* ECF No. 12-6 ¶ 3, Plaintiffs do not suggest that both Zayas and STC are separate parties but rather that Zayas seeks relief on STC's behalf. Zayas, as receiver for STC, is also an agent for those entities previously managed by STC (*i.e.*, Rudasill and Bellavia). *See* ECF No. 12-6 ¶ 6.B (Zayas may "take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of [STC]"). As such, no change to the identified Plaintiffs is necessary.

Second, Defendants allege that Zayas does not have the authority or standing to bring this action on behalf of Rudasill or Bellavia because Plaintiffs have not clearly established that an agency relationship exists between Zayas and Rudasill and/or Bellavia. An agency relationship can be created by express agreement or by inference from the acts of the agent and principal. *See Green v. H & R Block*, 355 Md. 488, 503 (1999). In determining if an agency relationship exists, Maryland law looks to "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Id.* "When a party asserts a claim dependent upon an agency relationship created by inference, that party has the burden of proving the existence of the principal-agent relationship, including its nature and its extent." *Id.* (citing *Hofherr v. Dart Industries, Inc.*, 853 F.2d 259, 262

11

(4th Cir. 1988)). In this case, Plaintiffs do not allege an agency relationship between Zayas and Rudasill or Bellavia based on inference; rather, Plaintiffs allege that the parties maintain an express agreement whereby Zayas, as the receiver for STC, has taken over STC's responsibilities to manage the Rudasill and Bellavia trusts. ECF No. 4 ¶ 2.[8] This statement, accepted as true, is enough to survive Defendants' Motion to Dismiss. Moreover, STC's purported ability to wire the alleged loan payments on behalf of Rudasill and Bellavia, ECF No. 4-3, 4-4, further suggests that an agency relationship exists. While Defendants question if the Rudasill and Bellavia trusts are still in existence, ECF No. 9-2 at 14 n. 5, the existence of the agency relationship is a factual matter not appropriate to be resolved at this stage. *See Green*, 355 Md. at 504.

Third, Defendants argue that STC is a foreign corporation that has not registered with SDAT before "doing business" in Maryland and is therefore barred from bringing suit in Maryland. ECF No. 9-2 (citing Md. Code, Corps. & Ass'ns, § 7-301). As Plaintiffs suggest, the "doing business" test requires an extensive business presence in Maryland before a corporation can be barred from bringing suit in Maryland for failing to register with SDAT. ECF No. 12 at 15 (citing *Turner v. Smalis*, 622 F. Supp. 248, 252–53 (D. Md. 1985)). On reply, the Defendants have not indicated that Plaintiffs' interpretation is incorrect or that STC maintains an extensive business presence in Maryland barring its ability to bring suit. As such, the Court will not dismiss STC at this time.

Fourth, and finally, Defendants argue that Adcor Packaging should be dismissed from this proceeding because Plaintiffs interchangeably refer to both "defendant" and "defendants," creating confusion as to what parties entered into the alleged loan agreement (*i.e.*, Adcor and

---

[8] Defendants cite *Haley v. Corcoran*, 659 F. Supp. 2d 714, 726 (D. Md. 2009) to suggest that Plaintiffs have not alleged facts sufficient to support an agency relationship. In *Haley*, the plaintiff attempted to bring suit against a title insurance company based on an alleged agency relationship between that title insurance company and a related settlement agent. However, this was an alleged agency relationship based on inference, not expresses agreement, and is therefore not applicable here.

12

Adcor Packaging or only Adcor). ECF No. 13 at 9. In addition to the general confusion created by Plaintiffs in referring to Defendants in both singular and plural terms, the Complaint is devoid of any statements that connect Adcor Packaging to the alleged loans. The only mention of Adcor Packaging in the Complaint is that Adcor Packaging maintains the same principal place of business as Adcor, ECF No. 4 ¶ 4, and that Stavrakis is principal and agent of both Adcor and Adcor Packaging, *id.* ¶ 22. These statements are insufficient to show that Plaintiffs are entitled to any relief against Adcor Packaging. Claims against Adcor Packaging are therefore dismissed.

### C. Failure to Plead Facts Sufficient to Support the Complaint (Counts II, V, and VI)

Defendants argue that Plaintiffs' claims for Unjust Enrichment (Count II), Breach of Contract (Count V), and Theft and/or Conversion (Count VI) do not contain facts sufficient to support the 'bald legal conclusions' set forth in the Complaint. ECF No. 9-2 at 9. In response, Plaintiffs attach a number of exhibits to support Counts II and V. Because Defendants' filed their motion as a motion to dismiss, or in the alternative, a motion for summary judgment, the Court will consider the exhibits. *See Rullan v. Goden*, No. CCB-12-2412, 2016 WL 1159112, at *6–7 (D. Md. Mar. 24, 2016) (citing *Gay*, 761 F.2d at 177) (converting defendant's motion to dismiss as a motion for summary judgment where defendant was aware that material outside the pleadings was before the court and defendant did not seek further discovery).

#### 1. Unjust Enrichment and Breach of Contract

As an initial matter, while Plaintiffs may not recover under both breach of contract and unjust enrichment theories, they are not barred from pleading both theories in the alternative when the existence of a contract is in dispute. *See Chevron U.S.A. Inc., v. Apex Oil Co. Inc.*, 113 F. Supp. 3d 807, 822 (D. Md. 2015). A claim for breach of contract is established when the plaintiff can prove "that the defendant owed the plaintiff a contractual obligation and that the

13

defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). Contracts can be written or oral or established through conduct as implied in fact. *See Dolan v. McQuaid*, 215 Md. App. 24, 35–36 (2013); *see also Lopez v. XTEL Const. Grp., LLC*, 796 F. Supp. 2d 693, 699 (D. Md. 2011) (noting that under standard contract principals, an agreement exists, whether oral or written, once there is offer, acceptance, and consideration). A claim of unjust enrichment is established when: "(1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return." *Benson v. State*, 389 Md. 615, 651–652 (2005).

Defendants allege that Plaintiffs' claims of breach of contract and unjust enrichment are insufficiently pled because Plaintiffs rely on unexecuted documents that do not evidence a mutual or binding agreement between the parties. ECF No. 9-2 at 11. Rather, Defendants suggest that Plaintiffs' wire transfers amounted to "an intentional conferring of a benefit based on a hope, a prayer, an expectation, or a gamble." *Id.* at 9 (quoting *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs*, 155 Md. App. 415, 419 (2004)). While Plaintiffs' Complaint references unexecuted documents that characterize their understanding of the loan agreement and associated investment opportunity in Adcor, ECF Nos. 4-2, 4-6, 4-8, Plaintiffs' allegations in the Complaint are sufficient to establish an agreement to enter into the loans.[9] *See, e.g.* ECF No. 4 ¶¶ 8, 9.

---

[9] Additionally, Plaintiffs provide documents suggesting that the alleged loan payments were made in response to the statements and conduct of Adcor. In three separate telephone conversations, Adcor Chief Financial Officer Alex Levin allegedly provided agreement to the "essential" terms of the loan and requested the wire transfers from Brown on behalf of the Trusts. ECF No. 12-1 ¶¶ 10, 12, 13. Adcor allegedly provided STC with wiring instructions for these loan payments. ECF No. 12-4. While the wiring instructions, dated March 26, 2010, are not addressed to Plaintiffs or signed by Levin, the Court will, for purposes of summary judgment, infer that the instructions were provided to STC in order to make the alleged loan payments. STC, on behalf of the Trusts, then drafted multiple

14

Adcor does not dispute that it received, and did not return, over $500,000 from the Trusts. Adcor does not explain how Plaintiffs obtained Adcor's financial information, patent portfolio, and loan summary, why Plaintiffs transferred the funds, what Adcor did with the funds once received, why Adcor continues to retain the funds, or show that the funds were transferred for a purpose other than a loan or lost investment opportunity.[10] The Plaintiffs' failure to produce documents executed by Defendants or proof of mutual assent to the loan agreement may ultimately prove fatal to their claims of breach of contract and unjust enrichment, but Defendants have failed to show that there are no genuine issues of material fact regarding the existence of an oral or implied in fact contract or, alternatively, that it would otherwise be equitable for Defendants to retain the wire transfers. Thus the Motion to Dismiss is denied as to these claims.

### 2. Conversion

The Defendants argue that Count VI should be dismissed because money cannot be the subject of a conversion claim. ECF No. 9-2 at 12 (citing *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 258–59, n.3 (2004)). In Maryland, "[t]he general rule is that monies are intangible and, therefore, not subject to a claim of conversion" because money is often comingled, losing its identity. *See Roman v. Sage Title Group, LLC*, 229 Md. App. 601, 609 (2016) (citing *Allied Investment Corp. v. Jansen*, 354 Md. 547, 560, 564 (1999)). Furthermore, unless there is an obligation on the part of the defendant to return the specific money to the plaintiff, there is only a debtor-creditor relationship, and a conversion action will not lie against

---

versions of the alleged loan agreement dated February 29, 2012 and February 14, 2014. ECF Nos. 12-3, 12-5. These versions, and STC's repeated demand letters sent to Adcor between May 2012 and February 2015, ECF No. 4-8, suggest that Plaintiffs did not wholly imagine the existence of the loan agreement but rather attempted to solidify its exact terms with input from Defendants (albeit after already dispersing the funds).

[10] Plaintiffs submit a letter from Michael J. Collins, a legal representative of Adcor, which sheds light on why Adcor may have retained Plaintiffs' wire transfers. ECF No. 4-9. However, as Defendants point out, the letter was made for the purpose of settlement and is not admissible to prove or disprove the validity of the disputed claim. *See* ECF No. 13 at 8 (citing Fed. R. Ev. 408); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

the debtor. *Roman*, 229 Md. App. at 609 (citing *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md. App. 476, 482 (1986)). However, an exception exists when a plaintiff can allege that the defendant converted specific or identifiable funds. *See Allied Inv. Corp. v. Jansen*, 354 Md. 547, 564–65 (1999) ("conversion claims generally are recognized in connection with funds that have been or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction") (internal quotation omitted). Maryland courts have applied this exception to money held in escrow accounts because these funds, even if physically mixed with other funds, are still restricted in use by agreement. *See Roman*, 229 Md. App. at 612–18. But Plaintiffs have not alleged any facts to suggest that Defendants have maintained the subject wire transfers as specific, segregated, or identifiable funds for any purpose, therefore the conversion claim must be dismissed.

### D. Claims Unrecognized by Maryland Law[11]

Count I, titled "Money Damages; Declaratory Relief" is not a cause of action in Maryland but rather a type of relief. Likewise, Count IV, "Breach of Duties: Care, Good Faith, and Fair Dealing, Declaratory Relief" is not an independent cause of action in Maryland. *See Mount Vernon Properties, LLC v. Branch Banking & Trust Co.*, 170 Md. App. 457, 471 (2006) (there is "no independent cause of action at law in Maryland for breach of the implied covenant of good faith and fair dealing"); *see also Eaglehead Corp., et al. v. Cambridge Capital Group, Inc., et al.*, 170 F. Supp. 2d 552, 562 (D. Md. 2001) ("Maryland does not recognize a separate cause of action for the breach of implied duty of good faith and fair dealing"). Finally, Count III. "Civil Conspiracy" is not an actual tort but a theory of liability that cannot be independently pled. *See Manikhi v. Mass Transit Admin.*, 360 Md. 333, 360 n.6 (2000). The alleged co-

---

[11] Defendants argued that Counts I, III, and IV are unrecognized by Maryland Law, ECF No. 9-2 at 7–8, 10–11, to which Plaintiffs failed to acknowledge in their brief in response, ECF No. 12.

16

conspirators are named defendants, and the underlying claims are already set forth in separate counts. *Id* (noting that conspiracy as an individual count is not proper because the co-conspirators are simply additional parties jointly liable for the underlying tort). Thus, each of these claims will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment, ECF No. 9, shall be granted, in part, and denied, in part. A separate Order follows.

Dated: September 26, 2017

GEORGE J. HAZEL
United States District Judge