UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND (Greenbelt Division)

| | |
|---|---|
| RICARDO J. ZAYAS, RECEIVER AND ) <br> AUTHORIZED AGENT FOR: ) <br> ) <br> SUMMIT TRUST CO., ) <br> ) <br> THE RUDASILL FAMILY CHARITABLE ) <br> REMAINDER) ANNUITY TRUST ) <br> ) <br> THE BELLAVIA FAMILY TRUST ) <br> ) <br> *190 Bethlehem Pike* ) <br> *Colman, PA 18915* ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> ADCOR INDUSTRIES, INC. ) <br> *234 S. Haven St.* ) <br> *Baltimore, MD  21224* ) <br> ) <br> **Defendant.** ) | CASE NO. 8-16-cv-03193-GJH <br><br><br><br><br><br><br><br><br><br> JUDGE GEORGE J. HAZEL <br><br> MAGISTRATE JUDGE <br> GINA L. SIMMS |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this case, defendant Adcor Industries, Inc. ("Defendant") admits by multiple evidentiary conduits of Responses to Requests for Admission, answers to Interrogatories and Answers to Requests for Production as well as select deposition testimony that it received over $518,000 via three wired transactions in a span of five days from the Plaintiff's bank accounts (Summit Trust Company, the Rudasill Family Charitable Remainder Annuity Trust, and the Bellavia Family Trust ("Plaintiffs") to the Defendant's

bank account. Defendant further admits that it gave Plaintiffs absolutely nothing in return.  The Defendant admits that it did not perform services, it did not provide stock and it refused to sign notes or post collateral.  In fact, Defendant took the Plaintiffs' money, kept it, repeatedly promised to return it, and still refuses to do so.  The substantial sums of money received by Defendant were not gifts and must now be repaid.

No issues remain in this case as to the material facts that Defendant knowingly took Plaintiffs' funds and that allowing Defendant to keep those funds would be inequitable.  Accordingly, Plaintiffs ask that their Motion for Summary Judgment as to their respective unjust enrichment claims be GRANTED.

## FACTUAL BACKGROUND

Defendant, a machine manufacturer, actively solicited the Plaintiffs in late 2011 and early 2012 to make commercial loans to Defendant. Adcor's proposal for the loans included financial information attesting to its ability to repay and collateralize the loans. See Complaint at Exs. A and E; see also Declaration of Kevin Brown ("Brown Dec."), Ex. A, ¶¶ 6-8; Hilco valuation of patent portfolio, Ex. B.  After arms-length negotiations yielded an agreement between the parties, Summit Trust Company ("Summit") prepared and presented Defendant with loan documentation, including a promissory note and guarantees to be signed.  See Brown Dec., Ex. A, ¶ 9; Loan Documents, Ex. C.  A series of three loans[1] were thereafter issued, one from each of the Plaintiffs, all administered by Summit.  Although loan documents were not yet signed, Defendant agreed to the loans

---

[1] Whether the proceeds delivered to Defendant are designated as loans is immaterial to Plaintiffs' claim for unjust enrichment which simply requires that a defendant knowingly receive a benefit from the plaintiff. *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000).

and received the loan proceeds from the Plaintiffs by wire transfer to Defendant's accounts as follows: 1) $145,292.40 from the Rudasill Family Charitable Remainder Annuity Trust ("Rudasill") on February 29, 2012; 2) $200,000.00 from Summit on March 7, 2012; and, 3) $172,800.00 from the Bellavia Family Trust ("Bellavia") on March 9, 2012. See Complaint at Exs. B, C, and D; see also wire transfer instructions from Adcor CEO, Alex Levin, Ex. D.

Despite receiving and retaining the transferred funds, Defendant refused to execute any documents memorializing the agreed-upon terms. See Complaint at Ex. G; See also Brown Dec., Ex. A, ¶ 14. Plaintiffs have made due demand for repayment of the loans and for payment of interest on multiple occasions. See Complaint at Ex. G. Defendant never claimed that no debt was owed. In fact, Defendant repeatedly acknowledged its debts and repeatedly broke its promises to repay them. For instance, in January, 2014, Defendant, through its authorized agent and officer, Jimmy Stravakis ("Stravakis"), acknowledged the debts Defendant owed to the Plaintiffs and stated his intention to sign loan documents memorializing the loans. See Brown Dec., Ex. A, ¶¶ 14-16. Stravakis also stated at that time that Plaintiffs should prepare loan documents for him to sign. See id., ¶¶ 15-16. In accord with Stravakis' acknowledgment and request, Plaintiffs prepared and presented restated loan documents for his signature. Id., ¶ 15; see also Restated Loan Documents, Ex. E. These documents, however, were never signed. See Complaint, ¶ 18; Brown Dec., Ex. A, ¶ 14.

Stravakis further repeatedly acknowledged Defendant's debts and its intention to repay them as witnessed in 2013, 2014 and more recently by a third party business consultant with a professional and social relationship with Stravakis. See Affidavit of

3

Michael Flatley Delmar, Ex. F, ¶¶ 2, 5, 6, 9. Most recently, in a face-to-face meeting with Kevin Brown in February of 2015, Stravakis again acknowledged Defendant's debts. See Brown Dec., Ex. A, ¶ 17. Despite these representations, no portion of the debts has been repaid to date. See *id.*, ¶ 18.

## SUMMARY JUDGMENT STANDARD AND UNJUST ENRICHMENT ELEMENTS

I.    Summary Judgment

A court may grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A material fact is one that constitutes an element that is essential to a party's case. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23; see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 ("the substantive law will identify which facts are material"). A genuine issue as to a material fact exists if the evidence that the parties present to the court is sufficient to indicate the existence of a factual dispute that could be resolved in the non-moving party's favor through trial. See *Anderson*, 477 U.S. at 248-49. While it is the movant's burden to show the absence of a genuine issue of material fact, *Pulliam Inv. Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987), it is the non-moving party's burden to establish its existence, see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986), and "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

II.   Unjust Enrichment

A claim for unjust enrichment has three elements:

> (1) a benefit conferred upon the defendant by the plaintiff;
> (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment.

*Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000).

The rationale for recovery for unjust enrichment has been stated as follows:

> The doctrine of unjust enrichment is applicable where the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money, and gives rise to the policy of restitution as a remedy.  The purpose of restitution, therefore, is to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction.
>
> Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain.

*Bank of America Corp. v. Gibbons*, 173 Md. App. 261, 918 A.2d 565 at 569 (2007) (quotations and citations omitted).

## ARGUMENT

I. <u>There is no genuine issue of fact that Defendant knowingly received the benefit of over $500,000 from Plaintiffs</u>

Defendant has unequivocally admitted to receiving into its business account three wire transfers of money from Plaintiffs, *viz.* 1) $145,292.40 from Rudasill; 2) $200,000.00 from Summit; and, 3) $172,800.00 from Bellavia. <u>See</u> Defendant's, Adcor Industries, Inc., Answers to Plaintiffs' First Request for Admissions ("Defendant's Written Admissions"), Ex. G,  ## 1-3 (admitting receipt of each of Plaintiffs' respective wire transfers); <u>see also</u> Complaint at Exs. B, C, and D.  Defendant's receipt of Plaintiffs' funds constitutes a conferred benefit.  <u>See</u> *Jackson v. 2109 Brandywine, LLC*, 180 Md.

App. 535, 327 (2008) ("A person confers a benefit upon another if he gives to the other possession of or some other interest in money."). Defendant was contemporaneously aware of its receipt of these sums of money and in fact provided Plaintiffs with the wire transfer instructions. See Defendant's Written Admissions, # 4 (admitting "Defendant provided the financial account number or numbers to receive the funds"), # 15 (admitting "Defendant acknowledged receipt of the funds"), Ex. G; see also wire transfer instructions from Adcor CEO, Alex Levin, Ex. D.

     Defendant's awareness of the benefit Plaintiffs conferred is also evidenced by its repeated acknowledgements and promises to repay its debts to Plaintiffs. In January, 2014, Stravakis acknowledged in a telephone conversation with Kevin Brown the existence of Adcor's outstanding debts to the Plaintiffs.  See Brown Dec., Ex. A, ¶ 16. During this conversation, Stravakis stated that he was aware of Defendant's debts and that Plaintiffs should prepare loan documents for him to sign.  See *id*., ¶¶ 15-16.  In accord with Stravakis' acknowledgment and request, Plaintiffs prepared and presented restated loan documents for his signature. See *id.*, ¶ 15; see also Restated Loan Documents, Ex. E. Despite Stravakis' promise, these documents were not signed. See Complaint, ¶ 18; Brown Dec., Ex. A, ¶ 14.  In 2013, 2014 and even more recently, Stravakis repeatedly acknowledged Defendant's debts to a third party business consultant with a professional and social relationship with Stravakis. See Affidavit of Michael Flatley Delmar, Ex. F, ¶¶ 2, 5, 6, 9.  Stravakis also stated that he was aware of Defendant's debts to the Plaintiffs in a face-to-face meeting with Brown in February of 2015.  See Brown Dec., Ex. A, ¶ 17.

Accordingly, there are no genuine issues of fact as to the first two elements of Plaintiffs' respective claims for unjust enrichment, *i.e.* that Defendant knowingly received from Plaintiffs the collective benefit of $518,092.40.  See *Berry, supra*, 757 A.2d at 113.

II.  <u>There is no genuine issue of fact that it would be inequitable for Defendant to retain the monetary benefit conferred by Plaintiffs when it has not repaid any part of the transferred funds nor given Plaintiffs anything of value</u>

Defendant admits that it has: 1) retained the funds conferred by Plaintiffs; 2) not repaid them in any way nor in any part; and, 3) not given Plaintiffs any share of corporate ownership in its business.  See Defendant's Written Admissions, ¶ 16 (retention of funds), ¶¶ 5, 17 (no repayment of funds in any way), and ¶ 6 (no transfer of corporate shares), Ex. G.  These funds were not gifts and were transferred only after negotiations between business entities. See Complaint at Exs. A and E; see also Brown Dec., Ex. A, ¶¶ 6-8; Hilco valuation of patent portfolio, Ex. B.  With Defendant having kept the funds and given literally nothing in return, it is plainly inequitable for Defendant to keep a completely unearned windfall.  The inequity of Defendant's retention of the funds is all the greater given Defendant's repeated acknowledgments of and broken promises to repay its debt as detailed *supra*.

"Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another." *4934, Inc. v. District of Columbia Dep't of Employment Services*, 605 A.2d 50, 55 (D.C. 1992).  Here, in justice, equity and every other way, the $518,092.40 in transferred funds belong to Plaintiffs.  Defendant did nothing to earn them and gave nothing in return.  Defendant simply walked away with the Plaintiffs' funds.  Indeed, there could not be a clearer set of facts demanding invocation of the equitable purpose "to prevent the defendant's unjust enrichment by recapturing the

gains the defendant secured in a transaction." See *Bank of America Corp.*, *supra*, 918 A.2d 565 at 569.

## CONCLUSION

Defendant received a total of $518,092.40 from Plaintiffs. These funds were not gifts. Defendant has not repaid its debt by any means, nor in any part, despite repeated promises to the contrary. In return, it has given Plaintiffs nothing. It is therefore inequitable for Defendant to keep these funds. There being no genuine issue of material fact as to the claims for unjust enrichment, Plaintiffs ask the Court to GRANT their Motion for Summary Judgment and to award Plaintiffs all such sums, including the respective sums conferred to Defendant, with interest[2], and other relief as it may deem proper.

Respectfully Submitted,

Askinazi Law & Business, LLC

By:

/s/ *William F. Askinazi*
William F. Askinazi
12054 Palatine Ct.
Potomac, MD  20854
301-540-5380
Bar #: 12522

and

Montgomery McCracken Walker & Rhoads LLP

---

[2] The legal rate of interest in Maryland is six percent annually (unless provided otherwise by the Maryland General Assembly). See Maryland Constitution, Article III, § 57. In this case, an award of interest is especially appropriate to effectuate the restitutional purpose of Plaintiffs' unjust enrichment claims.

Natalie Ramsey, Esq. (*pro hac vice* admission to be requested)
1235 Westlakes Drive, Suite 200
Berwyn, PA  19312
610-889-2232
Bar #: _____

*Attorneys for the Plaintiffs*

Certification

This  2nd day of June, 2018, the Plaintiff sent an e-copy of this Motion for Summary Judgment with Exhibits to counsel for the Defendant, Tom Donnelly, Esq.

/s/ *William F. Askinazi*
William F. Askinazi
12054 Palatine Ct.
Potomac, MD  20854
301-540-5380
Bar #: 12522