**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| RICARDO J. ZAYAS, RECEIVER AND AUTHORIZED AGENT FOR: | ) ) ) | |
| SUMMIT TRUST CO., | ) ) | |
| RUDASILL FAMILY CHARITABLE REMAINDER) ANNUITY TRUST | ) ) ) | |
| THE BELLAVIA FAMILY TRUST | ) ) | |
| **Plaintiffs,** | ) ) | CASE NO.8-16-cv-03193-GJH |
| v. | ) ) | |
| ADCOR INDUSTRIES, INC. | ) ) | |
| **Defendant** | ) | |

_____

**MEMORANDUM IN SUPPORT OF DEFENDANT ADCOR
INDUSTRIES, INC.'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Summary judgment should be granted in favor of Adcor Industries, Inc. ("Adcor"), pursuant to Fed. R. Civ. P. 56, because there is no genuine dispute of material fact and Adcor is entitled to judgment as a matter of law. There is no dispute of material fact that the Parties never signed an enforceable written loan agreement, that Plaintiffs are a "financial institution" as defined by Maryland law, and that any contemplated agreement was for commercial purposes. Plaintiffs are unable to prove the existence of an enforceable loan agreement or agreements, and therefore unable to prove necessary elements of Counts I and II of their Amended Complaint. Maryland's Credit Agreement Act entitles Adcor to judgment as a matter of law because it specifically proscribes the action Plaintiffs have brought to enforce this alleged agreement.

1

**Factual and Procedural Background**

Plaintiffs allege that, in February and March of 2012, Summit Trust Company, the Rudasill Family Charitable Remainder Annuity Trust, and the Bellavia Family Trust (collectively, "Plaintiffs") entered into loan agreements with Defendant, Adcor Industries, Inc ("Adcor"). On or about February 29, 2012, The Rudasill Family Charitable Remainder Annuity Trust transferred $145,292.40 to Adcor. On or about March 9, 2012, the Bellavia Family Trust transferred $172,800 to Adcor. On or about March 7, 2012, Summit Trust Company transferred $200,000 to Adcor. Plaintiffs allege that these transfers were made pursuant to the loan agreements between Plaintiffs and Adcor, but it is undisputed that there is not a single loan agreement or other contract signed by Adcor or a representative thereof. On May 10, 2012, and without Adcor's knowledge or consent, Plaintiffs each executed separate UCC-1 statements (collectively, the "UCC-1 Statements") with the Maryland Department of Assessments and Taxation ("SDAT"). These UCC-1 Statements allegedly perfected Plaintiffs' security interests in Adcor's intellectual property, including its patent portfolio, based on the alleged loans made from Plaintiffs to Adcor. On June 18, 2013, termination statements with respect to the three UCC-1 Statements were filed. Plaintiffs then waited over three years after making the alleged loans and after the termination statements were filed with SDAT to bring suit against Adcor.

On or about September 19, 2016, Plaintiffs filed their Complaint, alleging Money Judgment, Declaratory Relief (Count I), Unjust Enrichment (Count II), Civil Conspiracy (Count III), Breach of Duties: Care, Good Faith and Fair Dealing, Declaratory Relief (Count IV), Breach of Contract (Count V) and Theft and/or Conversion (Count VI). Adcor filed a Motion to Dismiss, or, In the Alternative, Motion for Summary Judgment ("Motion to Dismiss") on or about November 15, 2016. Plaintiffs filed a Response thereto on or about December 28, 2016. On or

about September 26, 2017, this Court granted in part and denied in part Defendant's Motion to Dismiss, or, In the Alternative, Motion for Summary Judgment. Plaintiffs subsequently filed an Amended Complaint on or about October 8, 2017, this time alleging only Breach of Contract (Count I) and Unjust Enrichment (Count II). Both counts are premised upon the existence of loan agreements between Plaintiffs and Adcor.

## Standard of Review

Summary judgment is appropriate under Fed. R. Civ. P. 56 when there is no genuine issue as to any material fact, and the moving party is entitled to judgment in its favor as a matter of law. A material fact is one that can affect the legal conclusion at issue. *See Hooven-Lewis v. Caldera,* 249 F.3d 259, 265 (4th Cir. 2001); *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir. 1995). A genuine dispute of material fact is one as to which the finder of fact, acting rationally and considering the record as a whole, could decide in favor of the party opposing the motion for summary judgment. *Thompson Everett, Inc.,* 57 F.3d at 1323; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (explaining that a dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

The summary judgment procedure provides a mechanism for avoiding an unnecessary trial and for eliminating factually unsupported and unsupportable claims. *See Thompson v. Aluminum Company of America,* 276 F.3d 651, 656 (4th Cir. 2002); *Mitchell v. Data General Corporation,* 12 F.3d 1310, 1315 (4th Cir. 1993); *McNierney v. McGraw-Hill, Inc.,* 919 F. Supp. 853, 857 (D. Md. 1995) ("[The] function of a motion for summary judgment is to smoke out if there is any case, i.e., any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time

and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition").

In deciding a motion for summary judgment, the Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). Summary judgment should be granted if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). The court views the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. However, inferences drawn by the court must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Thompson Everett, Inc.*, 57 F.3d at 1323.

When the moving party has properly supported a motion for summary judgment and demonstrated that no genuine dispute of material fact exists, the opposing party must posit facts based upon evidentiary material showing that a rational jury, viewing the record as a whole, could find for the opposing party. Fed. R. Civ. P. 56 (e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). "Mere speculation by the non-movant cannot create a genuine issue of material fact." *JKC Holding Company LLC v. Washington Sports Ventures,* 264 F.3d 459, 465 (4th Cir. 2001); *see also Hooven-Lewis*, 249 F.3d at 265 ("The mere existence of some alleged factual dispute between the parties, however, will not defeat an otherwise properly supported motion for summary judgment."). A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**Argument**

Summary judgment should be granted in favor of Defendant, as there is no genuine dispute of material fact to be considered at trial. Both counts of Plaintiffs' Amended Complaint seek enforcement of alleged loan agreements between Plaintiffs and Defendant. However, Plaintiffs have failed to produce a written, signed contract or contracts evidencing such loan agreements. To the contrary, Plaintiffs have specifically and repeatedly stated in their Complaint, Response to Motion to Dismiss, Amended Complaint and exhibits attached thereto that the alleged contracts were never signed by Defendant. These pleadings and the exhibits attached thereto, which form part of the record of this case and are detailed below, can be considered by this Court in this Motion for Summary Judgment. These repeated assertions evidence that no contract was ever signed by Defendant. Both counts are therefore barred by the Maryland Credit Agreement Act.

**A.     Counts I and II of Plaintiffs' Amended Complaint are barred by the Maryland Credit Agreement Act, as they seek enforcement of an alleged commercial credit agreement which is not evidenced by a writing signed by Defendant.**

Count I of Plaintiffs' Amended Complaint alleges breach of contract, while Count II alleges unjust enrichment. Both counts seek enforcement of alleged loan agreements. However, as plainly evidenced by the record, there exists no signed written contract or agreement between Plaintiffs and Defendant. Because of this deficiency, any alleged contract is unenforceable, and Defendant is entitled to judgment in its favor as a matter of law pursuant to the Maryland Credit Agreement Act.

Plaintiffs rely on two exhibits as evidence of a written loan agreement or agreements between Plaintiffs and Defendant: Exhibit A to Plaintiffs' Original Complaint and Exhibit L to Plaintiffs' Response to Defendant's Motion to Dismiss. Exhibit A to Plaintiffs' original Complaint, which is also incorporated by reference in Plaintiffs' Amended Complaint, consists of:

(1) a Letter of Intent from Summit Trust Company to Adcor, which is signed only by the then-president of Summit Trust Company; (2) a "Memorandum of Understanding," which is unsigned and contains no indication of who authored the document; and (3) two internal Summit Trust Company memoranda.  In Plaintiffs' original Complaint and again in their Amended Complaint, Plaintiffs contend that these documents, referred to as the "Loan Documents," prove the existence of a loan agreement or agreements between Plaintiffs and Defendant.  However, these one-sided documents are not signed by Defendant.

In Plaintiffs' Response to Defendant's Motion to Dismiss, Plaintiffs attached additional "Loan Documents" as Exhibit L; this exhibit is also incorporated by reference in Plaintiffs' Amended Complaint.  Exhibit L consists of: (1) an unexecuted Promissory Note between the Rudasill Family Charitable Remainder Annuity Trust ("Rudasill") and Defendant; (2) a Security Agreement between Rudasill and Defendant; (3) a Stock Pledge Agreement in favor of Rudasill; (4) a Guaranty Agreement between Rudasill and Jimmy Stavrakis; (5) an Affiliate Guaranty Agreement between Rudasill and Adcor Packaging Group, LLC; (6) a Closing Certificate of Adcor Packaging Group, Inc.;[1] (7) a Solvency Certificate of Adcor Industries, Inc.; and (8) an Affiliate Security Agreement between Rudasill and Adcor Packaging Group, LLC.  Like the documents contained in Exhibit A, none of these agreements are executed or even partially executed—i.e., the signature of an authorized representative of Adcor Industries, Inc. does not appear on one single document contained in Exhibit L.  Also notable is the fact that these documents only relate to one alleged loan concerning Rudasill and Defendant in the amount of $161,436.

From September 2016 to present, Plaintiffs have been unable to produce a single signed contract between Plaintiffs and Defendant.  This is evidenced by the clear deficiencies of the

---

[1] Adcor Packaging Group, Inc. is a not an existing Maryland entity.

alleged "Loan Documents," originally attached as Exhibit A to the Complaint and Exhibit L to the Response, and is flatly conceded by Kevin Brown, the President of Summit Trust Company from 2004 to 2015, under the penalty of perjury. *See, e.g.*, Response to Motion to Dismiss, Exhibit J, Declaration of Kevin Brown at 3, ¶ 14 ("Despite Adcor's receipt and retention of proceeds from the Loans, *Adcor refused to sign loan documents* as originally presented to Adcor in February 2012 and March 2012.") (emphasis added).[2] There is no genuine issue of fact as to whether a signed contract exists between Plaintiffs and Defendant; it is clear from the record that no such contract exists.

> **i.    The Maryland Credit Agreement Act deems unenforceable any credit agreement that is not signed by the person or party against whom its enforcement is sought.**

The Maryland Credit Agreement Act (the "Act") provides that "A credit agreement is not enforceable by way of action or defense unless it: (1) Is in writing; (2) Expresses consideration; (3) Sets forth the relevant terms and conditions of the agreement; and (4) Is signed by the person against whom its enforcement is sought." Md. Code, Crts. & Jud. Proc. § 5-408 (b). The Act defines "Credit agreement" as a "covenant, promise, undertaking, commitment, or other agreement by a financial institution to: 1. Lend money; 2. Forbear from repayment of money, goods, or things in action; 3. Forbear from collecting or exercising any right to collect a debt; or 4. Otherwise extend credit." § 5-408(1)(2)(i). "Financial institution" is defined to explicitly include trust companies. § 5-408(a)(3)(ii). Finally, § 5-408(c) of the Act provides that "(1) This section applies only to commercial transactions. (2) This section does not apply to: (i) Credit agreements made

---

[2] Defendant does not agree with or admit to Mr. Brown's characterization of Defendant's actions. Regardless of the negative connotations Mr. Brown attaches to Defendant's actions, his Declaration clearly demonstrates that Defendant never signed a loan agreement or other contract with Plaintiffs.

primarily for personal, family, or household purposes; or (ii) Credit extended by means of, or in connection with, a credit or charge card."

Plaintiffs fall under the statutory definition of "financial institutions," as they are all trust companies. § 5-408(a)(3)(ii). Further, the agreement Plaintiffs seek to enforce is an agreement *by a financial institution* (i.e., Plaintiffs) to lend money; this is clearly a "credit agreement" under the Act. Finally, the alleged credit agreement is a commercial transaction, as Plaintiffs allegedly loaned money to Adcor for business purposes. *See*, *e.g.*, Response to Motion to Dismiss, Exhibit J, Declaration of Kevin Brown at 2, ¶ 4 ("During the course of Summit's ordinary business operations, Summit negotiated and transacted commercial loans to businesses on behalf of Summit and as a duly authorized trustee on behalf of other client trusts."); *id.*, ¶ 6 ("Beginning in January, 2012, [Defendant], a machine manufacturer based in Baltimore, Maryland, solicited commercial loans from Summit, Rudasill and Bellavia.").[3] Plaintiffs clearly seek enforcement of a *credit agreement* through Counts I and II of their Amended Complaint, but no alleged contract or contracts were ever signed by Defendant. Any credit agreement is therefore unenforceable, as it is not "signed by the person against whom its enforcement is sought." § 5-408(b).

> ii. **Because the alleged credit agreement or agreements are unenforceable under the Maryland Credit Agreement Act, Defendant is entitled to summary judgment as a matter of law on Counts I and II of Plaintiffs' Amended Complaint.**

Counts I and II of Plaintiffs' Amended Complaint are premised upon the existence of credit agreements between Plaintiffs and Defendant. Count I alleges breach of contract. "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank,*

---

[3] Defendant only references this portion of the Declaration to show that, if a loan did exist, it would necessarily be commercial in nature. Defendant does not agree with or admit to Mr. Brown's characterization of Defendant's actions.

*N.A.*, 365 Md. 166, 175 (2001).  Before Plaintiffs can argue that Defendant breached any contract, Plaintiffs must first prove the *existence* of an *enforceable* contract.  As explained above, the Maryland Credit Agreement Act renders any alleged credit agreement between Plaintiffs and Defendant unenforceable.  Plaintiffs therefore are unable to prove the foundational element of their breach of contract claim.

Similarly, Count II (Unjust Enrichment) is factually dependent upon the existence and enforceability of the alleged credit agreements.  *See* Amended Complaint at 8, ¶ 40.  The Maryland Court of Special Appeals has held that three elements must be established to sustain a claim of unjust enrichment: "1.  A benefit conferred upon the defendant by the plaintiff; 2.  An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance for retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."  *Everhart v. Miles*, 47 Md. App. 131, 136 (1980).  The *Everhart* court further explained, "A person is enriched if he has received a benefit, and he is unjustly enriched if retention of the benefit would be unjust."  *Id.* (*quoting* Am. Jur. 2d Restitution and Implied Contract s 3 (1973)).  *Everhart* makes clear that a claim of unjust enrichment requires the plaintiff to prove not only enrichment, but also the unjust nature of the enrichment.  *Id.*  The "unjust" portion of Plaintiffs' unjust enrichment claim is premised upon the existence of a credit agreement or agreements between Plaintiffs and Defendant, and Defendant's failure to comply with any terms thereof.  *See* Amended Complaint at 8, ¶¶ 39-42.  Because there is no signed contract evidencing the alleged loan agreements, Plaintiffs' unjust enrichment claim should not survive summary judgment.  This is consistent with this Honorable Court's analysis in *V. Charles Donnelly, et al. v. Branch Banking and Trust Company*, 971 F.Supp.2d 495 (US Dist. MD 2013).[4]

---

[4] No relation to counsel in this case.

This Court, in *Donnelly*, did not permit a promissory estoppel claim to survive because "[a]t its core, Plaintiffs' promissory estoppel claim require[d] enforcement of an underlying agreement" which was also barred by Maryland Credit Agreement Act. *Id*. at 508. Because any alleged credit agreement is not signed by Defendant, and is therefore unenforceable under the Maryland Credit Agreement Act, Plaintiffs cannot prove a necessary element of their unjust enrichment claim.

Because the record clearly demonstrates the non-existence of any signed contract, and because a credit agreement that is not signed by the person or party against whom its enforcement is sought is not enforceable, Defendant is entitled to summary judgment in its favor on Counts I and II of the Amended Complaint.

## Conclusion

For the reasons set forth above, Defendant is entitled to summary judgment as a matter of law pursuant to Fed. R. Civ. P. 56.

        Respectfully submitted,

        _____//s//__Thomas M. Donnelly_____
        Thomas M. Donnelly, Bar #26622
        Law Offices of Thomas M. Donnelly, LLC
        401 E. Pratt Street, Suite 2415
        Baltimore, Maryland 21202
        Phone (410) 528-9200
        Fax (410) 528-9203
        tdonnelly@dmllclaw.com

        *Counsel for Defendant Adcor Industries, Inc.*