UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND (Greenbelt Division)

| | |
|---|---|
| RICARDO J. ZAYAS, RECEIVER AND ) <br> AUTHORIZED AGENT FOR: ) <br> ) <br> SUMMIT TRUST CO., ) <br> ) <br> THE RUDASILL FAMILY CHARITABLE ) <br> REMAINDER) ANNUITY TRUST ) <br> ) <br> THE BELLAVIA FAMILY TRUST ) <br> ) <br> *190 Bethlehem Pike* ) <br> *Colman, PA 18915* ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> ADCOR INDUSTRIES, INC. ) <br> *234 S. Haven St.* ) <br> *Baltimore, MD  21224* ) <br> ) <br> **Defendant.** ) | CASE NO. 8-16-cv-03193-GJH <br><br><br><br><br><br><br><br><br><br><br> JUDGE GEORGE J. HAZEL <br><br> MAGISTRATE JUDGE <br> GINA  L. SIMMS |

**MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendant Adcor Industries, Inc. ("Defendant") has attempted to base its present Motion for Summary Judgment on a tortured application of the Maryland Credit Agreement Act, Md. Cts. & Jud. Proc., § 5-408 (hereinafter "MCAA"), that affirmatively contradicts the clear and authoritative construction thereof by the Maryland Court of Appeals.  As that court has stated, the plain meaning and legislative intent of the MCAA circumscribes its application to only two contexts: 1) a prospective promise that a party will lend or borrow money; and, 2) an attempted modification of an existing credit

agreement. This case, however, concerns neither of those things. The instant case concerns money <u>that was in fact loaned and conferred to Defendant</u>, *viz.* over $500,000 by plaintiffs Summit Trust Company, the Rudasill Family Charitable Remainder Annuity Trust, and the Bellavia Family Trust ("Plaintiffs"). However, in spite of the MCAA's factual and legal inapplicability to this case, Defendant brazenly contends that it permits Defendant to simply keep all of Plaintiffs' money, give nothing in return, and reap an unearned windfall—all because Defendant refused to sign loan documents in accord with its repeated promises to do so. Such an absurd contention fails because the MCAA is entirely inapposite in the instant context according to the Maryland Court of Appeals' authoritative statement of the MCAA's plain meaning and legislative purpose. Defendant's Motion for Summary Judgment should therefore be DENIED.

## FACTUAL BACKGROUND

Defendant, a machine manufacturer, actively solicited the Plaintiffs in late 2011 and early 2012 to make commercial loans to Defendant. Adcor's proposal for the loans included financial information attesting to its ability to repay and collateralize the loans. <u>See</u> Complaint at Exs. A and E; <u>see</u> also Declaration of Kevin Brown ("Brown Dec."), Ex. A to Plaintiffs' Motion for Summary Judgment (Docket #31, filed June 2, 2018), ¶¶ 6-8; Hilco valuation of patent portfolio, Ex. B to Plaintiffs' Motion for Summary Judgment. After arms-length negotiations yielded an agreement between the parties, Summit Trust Company ("Summit") prepared and presented Defendant with loan documentation, including a promissory note and guarantees to be signed. <u>See</u> Brown Dec., Ex. A to Plaintiffs' Motion for Summary Judgment, ¶ 9; Loan Documents, Ex. C to Plaintiffs' Motion for Summary Judgment. A series of three loans were thereafter issued,

one from each of the Plaintiffs, all administered by Summit.  Although loan documents were not yet signed, Defendant agreed to the loans and received the loan proceeds from the Plaintiffs by wire transfer to Defendant's accounts as follows: 1) $145,292.40 from the Rudasill Family Charitable Remainder Annuity Trust ("Rudasill") on February 29, 2012; 2) $200,000.00 from Summit on March 7, 2012; and, 3) $172,800.00 from the Bellavia Family Trust ("Bellavia") on March 9, 2012. See Complaint at Exs. B, C, and D; see also wire transfer instructions from Adcor CEO, Alex Levin, Ex. D to Plaintiffs' Motion for Summary Judgment.

      Despite receiving and retaining the transferred funds, Defendant refused to execute any documents memorializing the agreed-upon terms. See Complaint at Ex. G; See also Brown Dec., Ex. A to Plaintiffs' Motion for Summary Judgment, ¶ 14.  Plaintiffs have made due demand for repayment of the loans and for payment of interest on multiple occasions. See Complaint at Ex. G.  Defendant never claimed that no debt was owed.  In fact, Defendant repeatedly acknowledged its debts and repeatedly broke its promises to repay them.  For instance, in January, 2014, Defendant, through its authorized agent and officer, Jimmy Stravakis ("Stravakis"), acknowledged the debts Defendant owed to the Plaintiffs and stated his intention to sign loan documents memorializing the loans. See Brown Dec., Ex. A to Plaintiffs' Motion for Summary Judgment, ¶¶ 14-16. Stravakis also stated at that time that Plaintiffs should prepare loan documents for him to sign.  See id., ¶¶ 15-16.  In accord with Stravakis' acknowledgment and request, Plaintiffs prepared and presented restated loan documents for his signature. Id.,¶ 15; see also Restated Loan Documents, Ex. E to Plaintiffs' Motion for Summary

Judgment. These documents, however, were never signed. See Complaint, ¶ 18; Brown Dec., Ex. A to Plaintiffs' Motion for Summary Judgment, ¶ 14.

Stravakis further repeatedly acknowledged Defendant's debts and its intention to repay them as witnessed in 2013, 2014 and more recently by a third party business consultant with a professional and social relationship with Stravakis. See Affidavit of Michael Flatley Delmar, Ex. F to Plaintiffs' Motion for Summary Judgment, ¶¶ 2, 5, 6, 9. Most recently, in a face-to-face meeting with Kevin Brown in February of 2015, Stravakis again acknowledged Defendant's debts. See Brown Dec., Ex. A to Plaintiffs' Motion for Summary Judgment, ¶ 17. Despite these representations, no portion of the debts has been repaid to date. See id., ¶ 18.

**SUMMARY JUDGMENT STANDARD**

A court may grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A material fact is one that constitutes an element that is essential to a party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23; see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 ("the substantive law will identify which facts are material"). A genuine issue as to a material fact exists if the evidence that the parties present to the court is sufficient to indicate the existence of a factual dispute that could be resolved in the non-moving party's favor through trial. See *Anderson*, 477 U.S. at 248-49. While it is the movant's burden to show the absence of a genuine issue of material fact, *Pulliam Inv. Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987), it is the non-moving party's burden to establish its existence, see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986), and "[t]he evidence

of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**ELEMENTS OF BREACH OF CONTRACT
AND UNJUST ENRICHMENT**

I.      Breach of Contract

A claim for breach of contract will succeed where the plaintiff can prove "that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. Nations Bank, N.A.*, 365 Md. 166 (2001).  Where words are employed to form a contract, such contracts may be either written or oral.  *Dolan v. McQuaid*, 215 Md. App. 24, 35 (2013) (citing *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs*, 155 Md. App. 415, 470-71 (2004)).  Oral and written contracts are equally valid and enforceable.  *Lopez v. XTEL Const. Grp., LLC*, 796 F. Supp. 2d 693, 699 (D.Md. 2011) ("[T]he agreement exists once offer, acceptance, and consideration are exchanged between the parties, regardless of whether the agreement is oral or written" (internal quotation marks and citation omitted)). In the absence of words affirming an agreement, conduct evidencing an intent to contract will establish a contract implied-in-fact. *Dolan*, 215 Md. App. at 36 (citing *Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987) ("A contract implied in fact is a 'contract' established by conduct.")).

II.     Unjust Enrichment

A claim for unjust enrichment has three elements:

> (1) a benefit conferred upon the defendant by the plaintiff;
> (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to

> make it inequitable for the defendant to retain the benefit without the payment.

*Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000).

The rationale for recovery for unjust enrichment has been stated as follows:

> The doctrine of unjust enrichment is applicable where the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money, and gives rise to the policy of restitution as a remedy. The purpose of restitution, therefore, is to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction.
>
> Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain.

*Bank of America Corp. v. Gibbons*, 173 Md. App. 261, 918 A.2d 565 at 569 (2007) (quotations and citations omitted).

## ARGUMENT

I.  <u>The MCAA applies only where a party promises to lend or borrow money or a party attempts to modify an existing credit agreement</u>

Although there exists no "pertinent part" of the MCAA for the purposes of the present motion, Defendant mistakenly attempts to rely on the MCAA's provision stating that "[a] credit agreement is not enforceable by way of action or defense unless it: (1) [i]s in writing; (2) [e]xpresses consideration; (3) [s]ets forth the relevant terms and conditions of the agreement; and (4) [i]s signed by the person against whom enforcement is sought." Md. Cts. & Jud. Proc., § 5-408(b). A "credit agreement" is defined under the MCAA as a "covenant, promise, undertaking, commitment, or other agreement by a inimical institution to: 1. [l]end money; 2. [f]orbear from repayment of money, goods, or things in action; 3. [f]orbear from collecting or exercising any right to collect a debt; or 4.

[o]therwise extend credit." *Id.* at § 5-408(a)(2)(i).  Further, a "'[c]redit agreement' includes agreeing to take or to not take certain actions by a financial institution in connection with an existing or prospective credit agreement." *Id.* at § 5-408(a)(2)(ii).  A "trust company" is defined to be a "financial institution." *Id.* at § 5-408(a)(3)(ii).

The leading case concerning the MCAA is *Pease v. Wachovia SBA Lending, Inc.*, 416 Md. 211 (2010).  There the Maryland Court of Appeals summarized the MCAA's applicable context and legislative history:

> The legislative history of the Act...illuminates the types of situations to which the General Assembly intended the Act apply. In 1989, at the time the legislation was enacted, "multimillion dollar lawsuits [were] being filed and recovery [was] being made based on alleged verbal promises to lend and based on modifications of existing loan agreements." Notes to H.B. 704 (1989). Thus, <u>the purpose of the bill was to "protect lenders against claims that the lender made a verbal promise to loan money and then refused to do so, or that the lender verbally agreed to extend the terms of a loan.</u>" Bill Analysis of H.B. 704 (1989).  We interpret the plain language and the legislative history of the Maryland Credit Agreement Act consistently to mean that a court should <u>only</u> engage the statute of frauds portion of the Act when, either through affirmative claim or defense, a commercial borrower or lender either attempts to recover on a verbal <u>promise</u> to lend/borrow, or seeks to enforce a verbal modification of an existing credit agreement.

*Id.* at 224-225 (emphasis added).[1]

---

[1] Whether the promise to lend is verbal or is written and unsigned is immaterial in the instant case.
[2] Indeed, Defendant's attempted defense under the MCAA is all the more audacious given that Defendant repeatedly promised and failed to sign the loan documents in accord with Plaintiffs' requests. See Loan Documents, Complaint at Ex. G; Brown Dec., Ex. A to Plaintiffs' Motion for Summary Judgment, ¶ 14-18;

II.  <u>The MCAA cannot bar Plaintiffs' claims for breach of contract nor for unjust enrichment because neither of those claims involve a promise to lend or borrow nor involve an attempt to modify an existing credit agreement</u>

Plaintiffs' claims in the instant case clearly do not fall within the bright lines drawn by the Maryland Court of Appeals in *Pease, supra*, where it clearly defined the full ambit of the MCAA's applicability. To wit, Plaintiffs' claims involve <u>neither</u> of the two exclusive contexts to which the MCAA might possibly apply: 1) a promise that a party will lend or borrow money; nor, 2) an attempt to modify an existing credit agreement. *Id.* at 224-225. In fact, it could not be clearer that Plaintiffs' claims involve money <u>that Plaintiffs actually loaned</u> to Defendant and that Defendant has entirely failed to repay. As such, Plaintiffs' claims plainly do <u>not</u> concern any prospective promise to make a loan. On the contrary, Plaintiffs' claims concern loans that were already issued to and received by the Defendant. Therefore, the MCAA has no bearing here because "a court should <u>only</u> engage the statute of frauds portion of the Act when, either through affirmative claim or defense, a commercial borrower or lender either attempts to recover on a verbal promise to lend/borrow, or seeks to enforce a verbal modification of an existing credit agreement." *Id.* (emphasis added).

Defendant cites not even a single case under the MCAA where a borrower attempted, successfully or not, to avoid repaying a debt because the borrower had not signed a loan agreement. This is, of course, unsurprising given the MCAA's patent inapplicability to such a scenario. Even apart from the factual non-applicability of the MCAA here, it must be noted that there is nothing whatsoever in Defendant's Motion for Summary Judgment that accords with the MCAA's purpose "to protect <u>lenders</u> against claims that the lender made a verbal promise to loan money and then refused to do so, or that the lender verbally agreed to extend the terms of a loan." *Id.* (emphasis added;

internal quotation and citation omitted). Thus, not only is Defendant's purported defense under the MCAA factually misplaced, it is also fundamentally at odds with the MCAA's purpose.[2] Accordingly, Defendant's Motion for Summary Judgment as to Plaintiffs' claims for breach of contract and unjust enrichment should be denied.

III.  <u>The MCAA cannot bar Plaintiffs' claims for unjust enrichment because those claims are equitable by definition and are not premised on the existence of an enforceable agreement</u>

Defendant repeatedly and erroneously contends that Plaintiffs' unjust enrichment claims are "premised upon the existence of a credit agreement or agreements between Plaintiffs and Defendant." <u>See</u> Defendant's Memorandum in Support of its Motion for Summary Judgment, p. 9; <u>see</u> also <u>id.</u> at pp. 3, 5 (twice), 8 and 9 (again). However, no insistence by repetition can alter the fact that Plaintiffs' unjust enrichment claims are <u>not</u> premised on the existence of an agreement; they are based on the simple non-contractual facts that: 1) Plaintiffs transferred over $500,000 to Defendant; 2) Defendant gave Plaintiffs literally nothing in return for the funds; and, 3) it would be inequitable to allow Defendant to keep the transferred funds. <u>See</u> Amended Complaint, ¶ 42 ("Adcor, having received the Loans and kept the proceeds of the Loans for its benefit, has been unjustly enriched at the expense of the Plaintiffs. Allowing Adcor to retain the proceeds of the Loans is contrary to the rules of equity."). <u>See</u> also, generally, Plaintiffs' Motion for Summary Judgment as to their unjust enrichment claims and Memorandum in Support, Docket #31, filed June 2, 2018.

---

[2] Indeed, Defendant's attempted defense under the MCAA is all the more audacious given that Defendant repeatedly promised and failed to sign the loan documents in accord with Plaintiffs' requests. <u>See</u> Loan Documents, Complaint at Ex. G; Brown Dec., Ex. A to Plaintiffs' Motion for Summary Judgment, ¶ 14-18; Restated Loan Documents, Ex. E to Plaintiffs' Motion for Summary Judgment; Affidavit of Michael Flatley Delmar, Ex. F to Plaintiffs' Motion for Summary Judgment, ¶¶ 2, 5, 6, 9.

Furthermore, by definition, unjust enrichment claims are not predicated on the existence of a contract. As the Maryland Court of Appeals has stated, the basis for recovery under a theory of unjust enrichment:

> ...is not in fact a contract, but an obligation which the law creates in absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it.

*County Commissioners of Caroline Counter v. J. Roland Dashiell & Sons, Inc.* 358 Md. 83, 747 A.2d 600, 606 (2000). See also *id.* at 610 (holding that unjust enrichment claims do not lie where a contract governs the parties' dispute). Therefore, Plaintiffs' unjust enrichment claims are, both by pleading and legal definition, not contractually based.

Because Plaintiffs' unjust enrichment claims are not contractually based and do not seek to enforce any agreement whatsoever, the MCAA does not apply to them. By its plain language, the MCAA applies only to contractual claims concerning "credit agreements." Md. Cts. & Jud. Proc., § 5-408(b) (limiting enforceability of credit agreements) and § 5-408(a)(2)(i) (defining credit agreements). The MCAA is therefore irrelevant to Plaintiffs' equitable unjust enrichment claims and cannot serve as a basis to bar them.[3]

Defendant cites but a single case for the proposition that the MCAA bars Plaintiffs' unjust enrichment claims, *i.e. Donnelly v. Branch Banking & Trust*, 971 F.Supp.2d 495 (D.Md. 2013). *Donnelly*, however, is wholly inapposite because, among

---

[3] Further, as is discussed *supra*, the loans at issue in this case are not subject to the MCAA's enforceability restrictions in any event. The MCAA bars none of Plaintiffs' claims because the does not apply in the instant context that involves neither a promise to lend or borrow money nor an attempted modification of an existing credit agreement.

other reasons, the plaintiffs in that case were attempting to recover under a theory of promissory estoppel which is, as the court noted there, <u>contractual</u> in nature. *Id.* at 508. ("[T]he nature of a lawsuit in which promissory estoppel is invoked remains that of an action to enforce a contract" (quoting *Suburban Hosp., Inc. v. Sampson*, 807 F.Supp. 31, 33 (D.Md. 1992)). *Donnelly* therefore offers nothing to support Defendant's clearly erroneous contention that the MCAA applies in this case to Plaintiffs' unjust enrichment claims that are, by definition, not contractually-based and that do not seek enforcement of an agreement. *Donnelly* is furthermore inapposite because there, unlike here, the Plaintiffs' claims actually <u>did</u> involve one of the two exclusive bases for the MCAA's applicability, *viz.* the "enforcement of an oral modification to the underlying loan agreement." 971 F.Supp.2d at 508.

There is thus no legal basis nor caselaw to support Defendant's attempted application of the MCAA to Plaintiffs' equitable unjust enrichment claims, which are, by pleading and definition, non-contractual in nature. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiffs' unjust enrichment claims should be denied.

## **CONCLUSION**

As the Maryland Court of Appeals' holding in *Pease* clearly indicates, the MCAA is not and never was intended to be a means for borrowers to avoid repaying their debts. The MCAA simply cannot serve as a berth for Defendant's indefatigable attempts to retain over $500,000 of Plaintiffs' money, give nothing in return, and reap a wholly unearned windfall. Plaintiffs' claims concern substantial loans that were actually made to and received by the Defendant—not mere promises to lend money nor attempts to modify an existing credit agreement. Therefore, per the court's instruction in *Pease* and the

MCAA's legislative history and purpose, it is clear that the MCAA has no relevance to the defense of Plaintiffs' claims for breach of contract nor for unjust enrichment. Accordingly, Defendant's Motion for Summary Judgment should be DENIED.

Respectfully Submitted,

Askinazi Law & Business, LLC

By:

s/ *William F. Askinazi*
William F. Askinazi
12054 Palatine Ct.
Potomac, MD  20854
301-540-5380
Bar #: 12522

and

Montgomery McCracken Walker & Rhoads LLP
Natalie Ramsey (*pro hac vice*
admission to be requested)
1235 Westlakes Drive, Suite 200
Berwyn, PA  19312
610-889-2232
Bar #: _____

*Attorneys for the Plaintiffs*

Certification:

This 11th day of June, 2018 the undersigned certifies that it e-filed a copy of this Opposition to Defendant's Summary Judgment to Thomas Donnelly at his e-address listed on ECF.                    /s/ William F. Askinazi