IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| **Rudasill Family Charitable Trust et al.,** | ) </br> ) |
| **Plaintiffs,** | ) </br> ) |
| v. | ) Civil Case No.: 8:16-cv-03193-GLS </br> ) |
| **Adcor Industries Inc. et al.,** | ) </br> ) |
| **Defendants.** | ) </br> ) |

**MEMORANDUM OPINION**

Pending before this Court, by the parties' consent, are Motions for Summary Judgment and Responses in Opposition thereto. (ECF Nos. 31, 32, 33, 34, 35). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* L.R. 105.6. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED (ECF No. 31) and Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART (ECF No. 32).

## I. Factual and Procedural Background

Plaintiffs are trust companies represented by a court appointed receiver, Plaintiff Ricardo Zayas. (ECF No. 19 at 2). Plaintiffs the Rudasill Family Charitable Remainder Annuity Trust ("Rudasill") and the Bellavia Family Trust ("Bellavia") are "non-Maryland entity plaintiffs" and Summit Trust Company ("STC") is headquartered in Nevada, but maintains a principal place of business in Pennsylvania. *Id.* Defendant Adcor Industries, Inc. ("Adcor") is a Maryland corporation that manufactures, assembles, and supplies precision machine components, aerospace, telecommunications, and weapons systems applications. *Id.*

1

According to Plaintiffs, STC negotiated and transacted commercial loans to businesses on its own behalf as a duly authorized trustee on behalf of other client trusts in its ordinary course of business. *Id.* at 3.

The following facts are undisputed. On or about February 29, 2012, Rudasill transferred $145,292.40 to Adcor. (ECF No. 31 at 3; ECF No. 32-1 at 2). Then, on or about March 7, 2012, STC transferred $200,000 to Adcor. *Id.* Finally, on or about March 9, 2012, Bellavia transferred $172,800 to Adcor. *Id.* Plaintiffs then filed three UCC-1 statements with the Maryland Department of Assessments and Taxation on May 10, 2012. (ECF No. 19, ¶ 20; ECF No. 32-1 at 2). Defendant subsequently filed termination statements on or about June 18, 2013 with respect to the May 10, 2012 UCC-1 statements. (ECF No. 19, ¶ 28; ECF No. 32-1 at 2). The filing of the UCC-1 statements allegedly perfected Plaintiffs' security interests in Adcor's intellectual property, including its patent portfolio, based on the alleged loans from Plaintiffs to Adcor. *See id.* Both parties agree that no written agreement memorializing the loans exists. (ECF No. 33 at 3–4; ECF No. 32-1 at 9).

Plaintiffs filed their Complaint on September 19, 2016, *i.e.*, four months after they learned that Defendant had attempted to terminate Plaintiffs' security interests. (ECF No. 1). Defendant filed a Motion to Dismiss on November 15, 2016 (ECF No. 9), which was fully briefed, and was later granted in part and denied in part by the Honorable George Jarrod Hazel in a September 26, 2017 memorandum opinion (ECF No. 15). Subsequently, Plaintiffs filed an Amended Complaint on October 8, 2017, alleging, in relevant part: (1) breach of contract and (2) unjust enrichment. (ECF No. 19). Plaintiffs also allege that they "did not know and could not reasonably have known" that Adcor attempted to terminate their security interests in 2013

until May 2016 "when the Receiver initiated investigation and collection efforts with respect to the Loans." *Id.* at 7.

In addition, Plaintiffs maintain that Defendant breached loan agreements because they and the Defendant "had a meeting of the minds regarding all loans" by February 2012 and "entered into a binding agreement . . . to provide the Loans to Adcor and Adcor agreed to repay the Loans, with interest." *Id.* ¶ 35. Plaintiffs allege that Adcor's failure and continued refusal to repay the loans despite agreeing to do so is a breach of contract. *Id.* ¶¶ 36–38. Plaintiffs aver that Defendant has been unjustly enriched at the expense of Plaintiffs by retaining the money. *Id.* ¶ 42.

On June 2, 2018, Plaintiffs filed a Motion for Summary Judgment (ECF No. 31), which was fully briefed, and on June 4, 2018, Defendant filed its Motion for Summary Judgment (ECF No. 32), which was also fully briefed. Accordingly, the Motions pending before this Court are ripe for disposition. No hearing is deemed necessary pursuant to L.R. 105.6.

**II.     Standard of Review**

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted). The burden can be satisfied through the submission of discovery materials. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). To defeat motions for summary judgment, on the other hand, the nonmoving party cannot simply cast "metaphysical doubt" on the material facts, but rather must

provide specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)).

The Court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions. *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 495, 520 (1991) (citing *Anderson*, 477 U.S. at 255)). A mere scintilla of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958–59 (citing *Seago*, 42 F.R.D. at 632). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. Analysis

In Maryland, the statute of limitations for a civil action is three years. Md. Code, Courts & Judicial Proceedings, § 5-101 (2014) ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."). The statute of limitations "does not extinguish [a] debt; it bars the remedy only." *Jenkins v. Karlton*, 329 Md. 510, 531 (1993). Maryland has long recognized that acknowledgement of a debt removes a statutory bar to recovery. *See Jenkins*, 329 Md. at 531. Such an acknowledgement need not "expressly admit the debt, it need only be consistent with the existence of the debt," and it does not have to "be an express promise to pay a debt." *Id.* Acknowledgement of a debt implies a promise to pay. *Id.* An acknowledgement of a debt also can toll the running of limitations and "establishes the date of the acknowledgement as the date from which the statute will now run." *Id.*

Equitable claims, including those claims for unjust enrichment, are barred by the statute of limitations applicable to civil actions if the cause of action is analogous to a breach of contract

4

claim. *See Llanten v. Cedar Ridge Counseling Ctrs., LLC*, 214 Md. App. 164, 171 (2013) (citing *Stevens v. Bennett*, 234 Md. 348, 351 (1964)).

Maryland has explained that any equitable claim seeking the repayment of money will sound in law rather than in equity and therefore be subject to the applicable statute of limitations. *See Ver Brycke v. Ver Brycke*, 379 Md. 669, 696 (2004) (concluding that plaintiffs' unjust enrichment and promissory estoppel sound in law because they seek repayment of money). Courts have held that "the parties' characterization of their claims does not determine equity jurisdiction . . . equity jurisdiction is determined either by whether the parties' claims have historically sounded in equity or by the kind of remedy the parties sought." *Id.* at 697.

To prove unjust enrichment, a party must prove: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value. *See Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000).

A promise by a financial institution to pay another is a "credit agreement" under the Maryland Credit Agreement Act ("MCAA"). Md. Code, Courts & Judicial Proceedings, § 5-408(a)(2)(i) ("Credit agreement means a covenant, promise, undertaking, commitment, or other agreement by a financial institution to . . . lend money"). For a credit agreement to be enforceable, it must: (1) be in writing; (2) express consideration; (3) set forth the relevant terms and conditions of the agreement; and (4) be signed by the person against whom its enforcement is sought. *Id.* § 5-408(b)(1)–(4).

## A. Plaintiffs' Motion for Summary Judgment

Plaintiffs moved for summary judgment as to their unjust enrichment claim on the grounds that Defendant "knowingly took Plaintiffs' funds and that allowing Defendant to keep those funds would be inequitable." (ECF No. 31 at 2). Plaintiffs make the following arguments: (1) "[t]here is no genuine issue of fact that Defendant knowingly received the benefit of over $500,000 from Plaintiffs" and (2) "there is no genuine issue of fact that it would be inequitable for Defendant to retain the monetary benefit conferred by Plaintiffs when it has not repaid any part of the transferred funds nor given Plaintiffs anything of value." *Id.* at 5, 7.

Plaintiffs allege that Defendant Adcor solicited Plaintiffs in late 2011 and early 2012 to make commercial loans to Adcor. (ECF No. 31 at 2). The proposal for the loans purportedly included financial information attesting to Adcor's ability to repay and collateralize the loans. *Id.* STC then allegedly prepared loan documentation for Defendant to sign. *Id.* But before these alleged documents were signed, Plaintiffs wired the funds to Defendant. By their Amended Complaint, Plaintiffs now seek repayment of the amounts transferred. *Id.* at 3.

Plaintiffs contend that after the transfer of the funds, Defendant refused to execute any documents memorializing the agreement between the parties that the funds were supposedly loans. *Id.* Plaintiffs maintain that they have made multiple demands for the loans' repayment and claim that Defendant has, acknowledged the debts on multiple occasions, including in May 2012, May 2013, September 2013, January 2014, and February 2015. *Id.*; ECF No. 31, Ex. 2 (Kevin Brown Declaration), ¶¶ 15–17. In particular, Plaintiffs allege that in January 2014, Stravakis acknowledged the debts and made a verbal statement of his intention to sign loan documents memorializing the loans. (ECF No. 31 at 3). Stravakis allegedly requested that Plaintiffs prepare these documents for his signature, and Plaintiffs maintain that they prepared

the documents (the "Restated Loan Documents"). *Id.* Plaintiffs aver that these documents were not signed. *Id.* These purported acknowledgements are alleged to have occurred within three years of the filing of the Complaint, thus tolling the statute of limitations to accrue on the last date of acknowledgement. (ECF No. 31-2, ¶¶ 16–17).

In its Opposition, Defendant argues that there is a genuine dispute of material fact regarding the timeliness of Plaintiffs' claim of unjust enrichment. (ECF No. 34 at 1). Defendant asserts that, "without [Adcor's acknowledgement of debt], Plaintiff's claims are barred by the applicable statute of limitations." *Id.* at 4. In support of its argument that Defendant never acknowledged the debt, Defendant presents both Stravakis' deposition testimony and a sworn affidavit, which reflect that Stravakis has never acknowledged any debt. *Id.* at 3. In Stravakis' deposition, when asked by Plaintiffs' counsel regarding the alleged acknowledgments of the debts, Stravakis repeatedly denies any knowledge or recollection of these events. *See* ECF No. 34-2 (Stravakis denies any recollection of: (a) the emails that allegedly support the existence of debts; (b) any conversations where he allegedly acknowledged the debt; or (c) the receipt of the Restated Loan Documents). Further, in his sworn affidavit, Stravakis makes the following statement: "I have not acknowledged any debt owed by Adcor to Summit Trust Company, Rudasill Family Charitable Remainder Annuity Trust or The Bellavia Family Trust at any time after June of 2012." (ECF No. 34-3).

### B. Adcor's Motion for Summary Judgment

In its Motion for Summary Judgment as to both Counts of Plaintiffs' Amended Complaint, Defendant makes the argument that "Counts I and II of Plaintiffs' Amended Complaint are barred by the Maryland Credit Agreement Act, as they seek enforcement of an

alleged commercial credit agreement which is not evidenced by a writing signed by Defendant." (ECF No. 32-1 at 5).

Defendant asserts that Plaintiffs cannot recover anything because "there exists no signed written contract or agreement between Plaintiffs and Defendant." (ECF No. 32-1 at 5). Under Maryland law, Defendant avers, Defendant is entitled "to judgment in its favor as a matter of law pursuant to the Maryland Credit Agreement Act." *Id.* Defendant avers that the only supporting documentation provided by Plaintiffs in their Complaint are not signed by Defendant, including: "(1) a Letter of Intent from Summit Trust Company to Adcor, which is signed only by the then-president of Summit Trust Company; (2) a 'Memorandum of Understanding,' which is unsigned and contains no indication of who authored the document; and (3) two internal Summit Trust Company memoranda." *Id.* at 6. In addition, Defendant maintains, Plaintiffs provided additional documents in response to Defendant's Motion to Dismiss (ECF No. 9), which were also unsigned by Adcor. *Id.* Defendant asserts that, although Plaintiffs contend that the attachments to their pleadings prove the existence of a loan agreement or agreements between Plaintiffs and Defendant, these documents are unexecuted and one-sided. *Id.* Defendant argues that "[f]rom September 2016 to present, Plaintiffs have been unable to produce a single signed contract." *Id.*

Plaintiffs, in response, argue first that the MCAA is inapplicable to the instant action, stating, "it could not be clearer that Plaintiff's claims involve money <u>that Plaintiffs actually loaned</u> to Defendant" rather than a promise to do so. (ECF No. 33 at 7–8) (emphasis supplied). Plaintiffs further aver that the MCAA's legislative history confines its application to "protect[ing] lenders against claims that the lender made a verbal <u>promise to loan</u> money and then refused to do so, or that the lender <u>verbally agreed</u> to extend the terms of loan." *Id.* at 7 (quoting *Pease v. Wachovia SBA Lending, Inc.*, 416 Md. 211 6A.3d 864 (2010)). Second,

8

Plaintiffs argue that their unjust enrichment claims "are not contractually based and do not seek to enforce any agreement whatsoever," so the MCAA does not apply to the unjust enrichment claims. *Id.* at 10.

### C. The Court's Findings

#### *1. Applicability of the MCAA*

The Court finds that the MCAA does apply to Plaintiffs' breach of contract claim. *See Pease*, 416 Md. at 224–225 (MCAA applies to a scenario "when, whether through affirmative claim or defense, a commercial borrower or lender either attempts to recover on a verbal promise to lend/borrow. . . ."). The MCAA defines a "credit agreement" as "a covenant, promise, undertaking, commitment, or other agreement by a financial institution to: 1. Lend money; 2. Forbear from repayment of money, goods, or things in action; 3. Forbear from collecting or exercising any right to collect a debt; or 4. Otherwise extend credit." Md. Code, Courts & Judicial Proceedings, § 5-408(a)(2)(i). Both parties have agreed that Plaintiffs, as trust companies, are "financial institutions" under the MCAA. *Id.* § (a)(3)(ii); (ECF No. 32-1 at 7; ECF No. 33 at 7).

Here, a commercial lender, Plaintiffs through STC, is attempting to recover on a verbal promise to borrow. Plaintiffs have claimed that they and Defendant had an oral agreement, and although Plaintiffs have made payments of the allegedly agreed-upon loans, Defendant has not yet fulfilled its alleged promise to repay that which it has borrowed. Plaintiffs are attempting to recover the allegedly loaned money.

However, the Court also finds that there is no written contract enforceable under the MCAA. Both parties ultimately agree that no written documentation for the alleged loans from Adcor to Plaintiffs exists. Plaintiffs have represented that Defendant refused to sign any

9

documents memorializing the loans. (ECF No. 33 at 3–4). Defendant asserts that "no signed contract" exists "evidencing the alleged loan agreements." (ECF No. 32-1 at 9). The Court finds that whether a signed contract exists is not in dispute; both parties agree that no signed document exists.

The MCAA makes clear that for a credit agreement to be enforceable, it must be in writing. *See* Md. Code, Courts & Judicial Proceedings, § 5-408(a)(2)(i). Because there is no written contract, the alleged credit agreement is not enforceable. Therefore, the Court denies Plaintiffs' Motion for Summary Judgment as to Plaintiffs' breach of contract claim and grants Defendant's Motion for Summary Judgment as to Count One of Plaintiffs' Amended Complaint.

However, the Court finds that the MCAA does not apply to Plaintiffs' unjust enrichment claim. Defendant, in its Motion for Summary Judgment, cites to *Donnelly v. Branch Banking & Trust Co.*, 971 F. Supp. 2d 495, 508 (D. Md. 2013). (ECF No. 32-1 at 9). In *Donnelly*, the claim was for promissory estoppel, and the court found that "[a]t its core, Plaintiffs' promissory estoppel claim requires enforcement of an oral modification to the underlying loan agreement." *Donnelly*, 971 F. Supp. 2d at 508. In the instant case, Defendant alleges that without a written agreement, Plaintiffs' unjust enrichment claim also cannot stand. (ECF No. 32-1 at 9). Specifically, Defendant maintains that Plaintiff cannot demonstrate that Defendant's retention of the money is "unjust." *Id.*

But the instant case is distinguishable from *Donnelly*. Here, Plaintiffs' unjust enrichment claim is not predicated on the existence of a contract. As explained in *Donnelly*, a promissory estoppel claim in Maryland is "an alternative means of obtaining contractual relief." 971 F. Supp. 2d at 508. Unlike a claim for promissory estoppel, which includes the element of "a clear and definite promise," an unjust enrichment claim is not predicated on a promise. *Id.* Construing

the facts in the light most favorable to Plaintiffs, a reasonable jury can find that Defendant received a benefit—the money that Plaintiff allegedly loaned to Defendant—and that Defendant unjustly retained the benefit, regardless of whether a contract between Rudasill and Adcor ever existed in advance of the money transfer. This scenario is particularly possible if, as Plaintiffs allege, Defendant later acknowledged that it owed a debt, which is addressed below.

The Court finds that the MCAA does not apply to Plaintiffs' unjust enrichment claim because the unjust enrichment claim is not predicated on the existence of a credit agreement. Therefore, the Court denies Defendant's Motion for Summary Judgment as to Count II: Plaintiff's unjust enrichment claim.

*2. Debt Acknowledgement and Tolling of Statute of Limitations*

There is a genuine issue of material fact as to whether Stravakis acknowledged the debt, and a reasonable jury could find in favor of either party on this issue. *See Anderson*, 477 U.S. at 250. Brown's declaration on behalf of Plaintiffs -- and Stravakis' representations on behalf of Defendant -- regarding the relevant conversations between Plaintiffs and Adcor are completely contradictory, and they leave wide open the question of whether Mr. Stravakis verbally agreed to the existence of a debt or not. Although Brown alleges that multiple conversations have occurred in which Stravakis acknowledged that Adcor owed Rudasill debts, Stravakis flat-out denies any acknowledgements in his sworn testimony. *See* ECF No. 34-2.

Unjust enrichment claims for monetary relief are claims at law in Maryland, which means that they are subject to the three-year statute of limitations. *See Ver Brycke*, 379 Md. at 696. As mentioned previously, Plaintiffs filed their Complaint on September 19, 2016, after the statute of limitations had expired. Plaintiffs alleges, however, that acknowledgements of the debt have

11

occurred within the three years preceding the Complaint's filing date—as late as 2015—which thereby tolled the statute of limitations. *See* ECF No. 19, ¶¶ 23–27.

The Court finds that the dispute as to whether Stravakis has acknowledged that Adcor owed Plaintiffs a debt at any time is a material one. The existence of the acknowledgment is material as to whether Plaintiffs are time-barred from any remedy because they filed the instant action beyond the three-year statute of limitations.

3. *Circumstances Surrounding Defendant's Retention of Money*

Plaintiffs allege that there is not genuine issue of fact that Defendant was unjustly enriched because Defendant: (1) "retained the funds conferred by Plaintiffs; (2) not repaid them in any way nor in any part; and, (3) not given Plaintiffs any share of corporate ownership in its business." (ECF No. 31 at 7).

Plaintiffs seek to prove that there was unjust enrichment, which means that they must prove that the money transferred to Adcor was "under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *See Berry*, 757 A.2d at 113. Although there is no dispute as to the first two elements of the unjust enrichment claim, there is a material dispute over the circumstances surrounding Defendant's retention of funds. Plaintiffs claim that Defendant's retention is inequitable because Defendant has "not given Plaintiffs any share of corporate ownership in its business," but that argument presupposes no dispute over why the funds were transferred. (ECF No. 31 at 7). Defendant has disputed Plaintiff's version of events. Not only is there a dispute over whether Stravakis acknowledged the debts, there are also multiple other disputes over, for example: (1) whether loan negotiations occurred in 2012 as Plaintiffs allege and (2) whether Defendant actually had

conversations with Plaintiffs about the alleged loans after the wire transfer, among others. These issues are questions for a jury to decide.

For these reasons, summary judgment is not appropriate as to Count Two. Therefore, the Court denies Plaintiffs' Motion for Summary Judgment as to Count II of Plaintiff's Amended Complaint.

**IV.   Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is **DENIED** (ECF No. 31) and Defendant Adcor's Motion for Summary Judgment is **GRANTED IN PART AS TO (COUNT I) AND DENIED IN PART** (ECF No. 32).

Specifically, with regard to:

- Count I:  Defendant's motion for summary judgment is GRANTED.
- Count II:  Plaintiffs' motion for summary judgment is DENIED.  Defendant's motion for summary judgment is DENIED.

Dated:  October 3, 2018                                /s/

The Honorable Gina L. Simms
United States Magistrate Judge